MOSLE et al. v. BIDWELL.

(Circuit Court of Appeals, Second Circuit.  April 25, 1904.)

No. 92.

1. CONSTRUCTION—LEGISLATIVE INTENT—METHOD OF ASCERTAINMENT.

Though, in construing a law, a court may not, in order to reach a conclusion as to legislative intent, inquire what individual members of Congress supposed a bill to mean, or what they intended to accomplish by their votes, it may consult the history of the act and the reports of committees having it in charge.

2. SAME—STATUTES IN PARI MATERIA—SUBSEQUENT LEGISLATION.

On appeal from a decision construing section 20, Customs Administrative Act June 10, 1890 (chapter 407, 26 Stat. 140 [U. S. Comp. St. 1901, p. 1950]), it appeared that Congress, in consequence of the apprehended results of said decision, had, in the act of December 15, 1902, c. 1, 32 Stat. 753 [U. S. Comp. St. Supp. 1903, p. 255], enacted an amendment, which, as reported to the House of Representatives by the committee having the bill in charge, was intended to "confine the language of the section [20] to the primary meaning and intent of the law." Held, that the latter statute should in this case be taken as declaratory of the meaning of the earlier one, and that said section should be construed to have had the effect given by the amendment.

3. CUSTOMS DUTIES—MERCHANDISE WITHDRAWN FROM WAREHOUSE—RATE OF DUTY APPLICABLE.

The provision in section 20, Customs Administrative Act June 10, 1890, (chapter 407, 26 Stat. 140 [U. S. Comp. St. 1901, p. 1950]), that merchandise in bonded warehouses may be withdrawn for consumption "on payment of the duties and charges to which it may be subject by law at the time of said withdrawal," means such payment as the merchandise would be subject to if imported at the time of withdrawal.

In Error to the Circuit Court of the United States for the Southern District of New York.

Note U. S. v. Benzon, 24 Fed. Cas. 1112; Merritt v. Cameron, 137 U. S. 542, 11 Sup. Ct. 174, 34 L. Ed. 772. For decision below, see 119 Fed. 480.

This cause comes here upon writ of error to review a judgment of the Circuit Court in favor of defendant in error, who was defendant below, sustaining a demurrer to the complaint. The action was to recover from the collector of the port of New York certain duties collected upon sugars imported from the island of Porto Rico.

¶ 1. See Statutes, vol. 44, Cent. Dig. §§ 292, 293, 299.

John G. Carlisle, for plaintiffs in error.
Chas. Duane Baker, for defendant in error.

Argued before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. The sugars were imported and stored in bonded warehouse on April 4, 1899. The tariff act of July 24, 1897, c. 11, schedule E, 30 Stat. 168 [U. S. Comp. St. 1901, p. 1647], imposed duties on sugars, and there has been no change in that schedule down to the time when the collector exacted duties on this importation. On April 11, 1899, by exchange of ratifications, the treaty of peace between the United States and Spain (30 Stat. 1754), ceding the island of Porto Rico to the United States, became effective. The Supreme Court has held in De Lima v. Bidwell, 182 U. S. 1, 21 Sup. Ct. 743, 45 L. Ed. 1041, that merchandise brought from Porto Rico to the United States after the ratification of that treaty, and until the enactment of the Foraker act, was not subject, by the law in force during that period, to any import duty whatsoever. On May 6, 1899, the sugar in question was withdrawn from bond for consumption, and duties were liquidated and paid May 17, 1899, at the rate prescribed in the tariff act of 1897. The importers protested, claiming that it might be withdrawn from bond free of duty. They relied on section 20 of the customs administrative act of June 10, 1890 (chapter 407, 26 Stat. 140 [U. S. Comp. St. 1901, p. 1950]), which reads:

"Sec. 20. That any merchandise deposited in bond in any public or private bonded warehouse may be withdrawn for consumption within three years from the date of original importation, on payment of the duties and charges to which it may be subject by law at the time of such withdrawal: provided, that nothing herein shall affect or impair existing provisions of law in regard to the disposal of perishable or explosive articles."

The plaintiffs contended that the phrase "duties to which it may be subject by law at the time of withdrawal" should be construed to mean "duties no greater nor different than other like goods imported at the time of withdrawal would be subject to." The court held that the goods were subject to duty in the amount exacted of the plaintiffs when they were deposited in bond; that they remained so in the absence of any treaty or statute relieving them from duty; and that neither the treaty nor any statute passed subsequently to the one imposing the duty has impaired or affected the right to collect it.

We need not discuss the several arguments which have been advanced in criticism and in support of this decision. No principle of statutory construction is better settled than the one which holds that the intention of the Legislature, when discovered, must prevail, any rule of construction declared by previous acts to the contrary notwithstanding. The following excerpts from U. S. v. Freeman, 3 How. 556, 11 L. Ed. 724, are apposite to the case at bar:

"A legislative act is to be interpreted according to the intention of the Legislature, apparent upon its face. * * * In doubtful cases a court should compare all parts of a statute and different statutes in pari materia to ascertain the intent of the Legislature. * * * If a thing contained in a subsequent statute be within the reason of a former statute, it shall be taken to be within the meaning of that statute; and, if it can be gathered from a subsequent statute

in pari materia what meaning the Legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute."

On December 15, 1902, Congress passed an act (chapter 1, 32 Stat. 753 [U. S. Comp. St. Supp. 1903, p. 255]) amending section 20 of the customs administrative act, quoted above, by inserting before the existing proviso an additional proviso, as follows:

"Provided, that the same rate of duty shall be collected thereon as may be imposed by law upon like articles of merchandise imported at the time of withdrawal."

Ordinarily, such an amendment might be taken as indicating an intention to make some change in the existing law, but, although we may not inquire as to what individual members supposed a bill to mean, or what they intended to accomplish by their votes, we may consult the history of the act itself, and the reports of committees having it in charge, in order to reach a conclusion as to legislative intent. It appears that the bill was introduced in consequence of the apprehended results of the decision of the Circuit Court in the case at bar, and the committee of ways and means reported to the House on December 11, 1902, that "the bill simply endeavors to conform the language of the section to the primary meaning and intent of the law and to accord with the custom and ruling of the Treasury Department." Under the rule laid down in U. S. v. Freeman, supra, the later statute may be taken as declaratory of the meaning of the earlier one.

The judgment is reversed, and cause remanded for a new trial.

COXE, Circuit Judge, concurs in result.