UNITED STATES v. ST. LOUIS, I. M. & S. R. CO.

(District Court, W. D. Tennessee, W. D. June 11, 1906.)

No. 1,100.

COMMERCE—REGULATION OF INTERSTATE COMMERCE—SAFETY APPLIANCE ACT.

In section 2 of the safety appliance act of March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174], which makes it unlawful for any railroad engaged in interstate business "to permit to be hauled or used on its line any car used in moving interstate traffic" not equipped with au-

tomatic couplers, the phrase "used in moving interstate traffic" does not mean that a car must be actually loaded and on its journey from one state to another in order to be within the provisions of the act, but only that it has been, and is intended to be. so used whenever required, and it is a violation of the act to move such a car not equipped with automatic couplers from one state to another as a part of a train, although it is empty at the time; nor is the mere fact that it is destined to a repair shop a defense.

[Ed. Note.—Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

On Motion for Directed Verdict.

George Randolph, U. S. Dist. Atty., and L. M. Walter, Sp. U. S. Atty.

McFarland & Canada, for defendant.

McCALL, District Judge. In this case the United States sues the defendant, the St. Louis, Iron Mountain & Southern Railroad company, to recover the penalty as provided for violating sections 2 and 4 of the safety appliance act, approved March 2, 1893 (27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), and as amended April 1, 1896. There are 11 counts in the declaration based upon 11 alleged violations of the law. The defendant pleaded the general issue of not guilty to each count. The case was heard before the court and a jury. At the conclusion of plaintiff's testimony, the defendant moved the court to direct a verdict in favor of the defendant as to the first, second, and tenth counts in the declaration. The motion was denied. Thereupon the defendant agreed that the jury should be directed to find in favor of the plaintiff and against the defendant upon each count in the declaration, except the first and second, and elected to stand by its motion for a directed verdict as to the first and second counts, declining to introduce any testimony before the court and jury. Thereupon the plaintiff moved the court to direct a verdict for the plaintiff as to the said first and second counts.

The undisputed testimony touching these two counts is as follows: Two Missouri & Pacific Railroad freight cars, Nos. 22,824 and 31,921, were hauled as parts of defendant's train over its road during the months of June and July, 1906, into and out of the states of Tennessee, Arkansas, Louisiana, and Kansas. These two cars were hauled into Memphis, Tenn., just prior to June 27th, and on that date, while in defendant's yards, they were inspected by United States inspectors to ascertain if they were equipped with grab irons and automatic couplers as required by law. It was found that what is designated as the "A" end of one of these cars and the "B" end of the other had no couplers. These cars were, at the time of the inspection, empty, and, with these two defective ends adjoining, they were chained together and placed in a freight train destined to the state of Arkansas and the West, and could not be coupled or uncoupled without going between them or under them. On June 27th, they were hauled as a part of this freight train, composed of about 30 cars, out of the state of Tennessee into the state of Arkansas by defendant railroad company. These two particular cars were waybilled to Baring Cross shops, Ark.,

near Little Rock, to be repaired. Baring Cross shops are the repair shops of the defendant company. The defendant also has repair shops at Memphis, Tenn. The work necessary to properly equip these two cars with automatic couplers as the law directs could have been performed within five or six hours' time.

Section 2 of the act of Congress, approved March 2, 1893, provides as follows:

"That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul, or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars" —meaning any common carrier engaged in interstate commerce by railroad.

The able counsel for the defendant resists the motion made by the plaintiff, and insists that the admitted facts, as stated, do not bring the case of the two cars under consideration within the purview of the law just quoted. His position is that it is shown that these two cars, at the time they were inspected by the United States inspectors and found defective, were on the way to the defendant's shops for repairs, and that they were not "cars used in moving interstate traffic" within the meaning of the statute.

It is clear that they were hauled by the defendant over its road from Tennessee to Arkansas, and constituted a part of a freight train of some 30 freight cars. To "haul" means (1) to "drag with force or violence, to pull, to draw, to tug, to drag; (2) to carry or convey in a cart or other vehicle." Worcester's Dictionary. Defendant insists that the word "haul" as used in the act of Congress takes the second definition given above—that is, "to carry or convey in a cart or other vehicle"—that is, that these two cars must have been at the time actually in use conveying commodities of interstate commerce. Such a construction would so far negative the purpose of the act in question as to well-nigh render it of no practical use. If defendant's contention is correct, a freight train of 50 cars used in moving interstate traffic might have only 5 loaded cars, all the others empty, and it would only be necessary for the 5 loaded cars to be equipped with couplers. There is as great danger to the employé in going between empty cars to couple and uncouple them as there is in going between loaded cars for like purpose. The law is intended to protect the employé, whether the cars are loaded or empty, the condition being that the cars are used in moving interstate traffic. It is as much in violation of this act to haul—that is, to pull, to drag, to draw—an empty car that is used in moving commodities of interstate commerce, and which is not equipped with automatic couplers, as it is to haul a car actually loaded with commodities of interstate commerce, not so equipped. The phrase, "used in moving interstate traffic," does not only mean that the car must be actually loaded with interstate traffic and on its journey from state to state at the time of the alleged violation, but its more natural meaning is that it is a car that has been used for such purpose, stands ready, and is intended to be used for such purpose whenever needed.

It is insisted, however, that these cars were not being used, but were chained together and on the way to the shop for repairs. It is true that they were not being used in the sense that they were loaded, so also it is true that they were on the way to the shops. But it is equally true that they were cars that were "used in moving interstate traffic," albeit at this particular time they were empty. They were being hauled over defendant's line of railroad, and were not equipped with couplers, coupling automatically by impact, and which could not be uncoupled without the necessity of men going between the ends of the cars. The fact that these two cars were being hauled to the repair shops in the manner disclosed by the evidence cannot avail the defendant. The statute makes no such exception. Moreover, the proof is that the defendant had repair shops in Memphis, the point from which these two crippled cars were started on their way to the repair shops at Baring Cross.

In my opinion, defendant is also liable to the plaintiff under counts 1 and 2 of the declaration.

The motion, therefore, must be allowed, and the jury directed to return a verdict accordingly.