## UNITED STATES v. CHICAGO & N. W. RY. CO.

(District Court, D. Nebraska.   December 30, 1907.)

1. CARRIERS—INTERSTATE COMMERCE—SAFETY APPLIANCE ACT.
      The effect of the amendment of Act March 2, 1903 (32 Stat. 943, c. 976 [U. S. Comp. St. Supp. 1907, p. 885]), to the original safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), as amended in 1896 (Act April 1, 1896, c. 87, 29 Stat. p. 85), is to leave no room for distinction between hauling a car actually engaged in interstate commerce and hauling one that is generally used in moving interstate traffic, although not actually so engaged at the time when the offense is charged as being committed.

2. STATUTES—CONSTRUCTION.
      The court, in construing a statute, may consult the history of the act, and the reports of committees having it in charge.

3. CARRIERS—INTERSTATE COMMERCE.
      The mere hauling of an empty car from one state to another, even though it may be for the purpose of repairing a defect, is engaging in interstate commerce.

4. SAME—SAFETY APPLIANCE ACT.
      As an engine is a car within the safety appliance statute (Johnson v. Southern Pacific Company, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; United States v. Colorado & Northwestern Railway Company [Circuit Court of Appeals, Eighth Circuit, November 25, 1907], 157 Fed. 342) when such engine is engaged in interstate commerce, any car or cars attached to that engine are used in connection with a car which is engaged in interstate commerce, and consequently come within the amendment of March 2, 1903 (32 Stat. 943, c. 976 [U. S. Comp. St. Supp. 1907, p. 885]).

(Syllabus by the Court.)

Charles A. Goss, U. S. Atty., A. W. Lane, Asst. U. S. Atty., and Luther M. Walter, Special Asst. U. S. Atty.
      B. T. White and C. C. Wright, for defendant.

T. C. MUNGER, District Judge.   This action is brought by the United States against the Chicago & Northwestern Railway Company, and the petition alleges that the defendant violated the acts of Congress known as the "safety appliance acts" in hauling on its line an empty railroad car consigned from Omaha, Neb., to Council Bluffs, Iowa, on which a grab iron was missing. The answer of the defendant admits that it hauled its own empty car from Omaha, Neb., to Council Bluffs, Iowa, and alleges that the car was inspected at South Omaha on June 3, 1906, and found to be in bad condition, the grab iron being missing, and that the car remained at South Omaha until

June 7, 1906, when it was sent from South Omaha to the repair tracks of the defendant at Council Bluffs, Iowa, for the purpose of having the car repaired, and that the shops at Council Bluffs, Iowa, were the most convenient shops at which the car could be repaired. The case has been submitted upon a general demurrer to the answer.

The contention of the defendant railway company is that the provisions of section 4 of the safety appliance act, approved March 2, 1893 (27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), as follows: "It shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons," etc. —do not refer to a car being moved as this one was, as it was not being used in interstate commerce. The government contends that the amendment to this act approved March 2, 1903 (32 Stat. 943, c. 976 [U. S. Comp. St. Supp. 1907, p. 885]), which provided that "the provisions and requirements" of the original act as amended April 1, 1896 (29 Stat. 85, c. 87), "shall be held to apply to common carriers * * * and shall apply in all cases, whether or not the couplers brought together are of the same kind, make, or type; and the provisions and requirements hereof and of said acts relating to train brakes, automatic couplers, grab irons, and the height of drawbars shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce * * * and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith," applies to the use of the car in the manner charged in the petition and admitted by the answer. Under the original safety appliance act, as it existed prior to the amendment approved March 2, 1903, it was unlawful "to use any car in interstate commerce that is not provided with secure grab irons." By the provisions of the amendment to the safety appliance act approved March 2, 1903, the requirements relating to grab irons apply "to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, * * * and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith." The effect of this amendment was to define the use of cars upon which grab irons were to be placed in similar language to that used in sections 1 and 2 of the original safety appliance act. It left no room for a distinction between the hauling of a car actually engaged in interstate commerce and the hauling of a car which is generally used in moving interstate commerce, although not actually so engaged at the time when the offense is charged as being committed.

Some contention was made on the part of the government that, if the railroad is engaged in interstate commerce, then the use of a car which is not provided with a grab iron, on any part of the railroad for any purpose, was a violation of the terms of the amendatory act. In other words, that the qualifying clause "engaged in interstate commerce," refers to the preceding substantive, "railroad," rather than to the words, "trains, locomotives, tenders, cars, and similar vehicles." It is further contended that, as the answer of the defendant admits it is a railroad engaged in interstate commerce, it admits the offense. This construction requires the assumption that Congress intended to legislate as to the use wholly within the boundaries of a

state of a car which itself was in no way engaged in interstate commerce or in connection therewith, because the railway upon which the car was operated was engaged in interstate commerce. The report of the Senate Committee on interstate commerce, in proposing the amendment to the bill which embraced the language now found in the act, in stating the purpose of this amendment, said that it was "to make the provisions of this bill and the provisions of the acts of 1893 and 1896 applicable to the territories and the District of Columbia, and to require there and elsewhere the equipment of tenders, cars, and similar vehicles used in interstate commerce, and, in connection therewith, with automatic couplers, grab irons," etc. Senate Report 1930, Fifty-Seventh Congress, First Session. While the court in construing the law may not inquire what individual members of Congress supposed the bill to mean, it may consult the history of the act and the reports of the committees having it in charge. Mosle v. Bidwell, 130 Fed. 334, 65 C. C. A. 533.

Whether or not this is the proper construction of the act is not determined, as it is not necessary to be decided in the view taken of the facts in this case. If we construe the act as meaning that the cars used, as distinguished from the railroad, be engaged in interstate commerce, the question for solution is whether the car in question at the time charged was engaged in interstate commerce, for the answer of the defendant admits that the defendant is engaged in interstate commerce by railroad. The answer of the defendant further admits that the car in question "is one used by said defendant company at different times in the movement of interstate traffic." No reason is perceived why a different intention should be imputed to Congress in requiring grab irons upon cars and in requiring automatic couplers upon the same cars. The mischief to be avoided was the same in either case, and the remedy sought by Congress was obviously the same, and the assimilation of the language in the amendatory act to that used in sections 1 and 2 of the original acts leads to the conclusion that it was for the purpose of broadening the act from its original purpose, as expressed in section 4, in order to make it necessary to provide grab irons on a car whenever it was necessary to provide automatic couplers and a train brake system. In United States v. St. Louis, Iron Mountain & Southern Railroad Company (D. C.) 154 Fed. 516, the railway company hauled two freight cars into Memphis, Tenn., just prior to June 27, 1906, and on that date, while in the defendant's yards, the two cars were inspected by United States inspectors and found to be defective as to couplers. The two cars were then empty, and, with the two defective ends chained together, the cars were placed in a freight train destined to Arkansas and the West; and the same day they were inspected and found deficient, and were hauled out of Tennessee and into Arkansas by the defendant in that case, and these two cars were waybilled to Baring Cross shops, Arkansas, near Little Rock, to be repaired. The defendant in that case contended that, under section 2 of the act of Congress, these cars were not used in moving interstate traffic. The court said:

"It is insisted, however, that these cars were not being used, but were chained together and on the way to the shop for repairs. It is true that they were

not being used in the sense that they were loaded, so also it is true that they were on the way to the shops. But it is equally true that they were cars that were 'used in moving interstate traffic,' albeit at this particular time they were empty."

In the case of Schlemmer v. Buffalo, etc., Railway Company, 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681, section 2 of the safety appliance act was held to apply to a steam shovel car in a train on the way through Pennsylvania to a point in New York. The trial court held that the shovel car "was not a car used in interstate commerce or any other kind of traffic." In passing upon this question the Supreme Court of the United States stated that an argument was made that the steam shovel car was not a car within the meaning of section 2, and then said the "question is pretty nearly answered by Johnson v. Southern Pacific Company, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363. As there observed, "Tested by context, subject-matter, and object, "any car" meant all kinds of cars running on the rails, including locomotives. The object was to protect the lives and limbs of railroad employés by rendering it unnecessary for a man operating the couplers to go between the ends of the cars.' These considerations apply to shovel cars as well as to locomotives, and show that the words 'used in moving interstate traffic' should not be taken in a narrow sense. The later act of March 2, 1903 (32 Stat. 943, c. 976 [U. S. Comp. St. Supp. 1907, p. 885]), enacting that the provision shall be held to apply to all cars and similar vehicles, may be used as an argument on either side, but in our opinion indicates the intent of the original act. There was an error on this point in the decision below." The provisions of this act have been held to apply, also, to empty cars being hauled by the railway. Johnson v. Southern Pacific Company, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; Voelker v. Railway (C. C.) 116 Fed. 867; United States v. Northern Pacific R. R. (D. C.) 144 Fed. 861.

The necessity of protecting the lives and safety of trainmen working about a car which is being hauled from one state to another to be repaired is as obvious as the necessity of protecting the lives and safety of trainmen working about an engine or a steam shovel car. Neither may be carrying freight at the time, nor is the engine or steam shovel car ordinarily designed to carry freight or passengers. The mere hauling of the car itself was engaging in commerce. If the car was taken apart, and loaded upon another car and hauled by it, no question could be made that it would constitute commerce as much as if the car was loaded with wheels or rails or ties for use by the railroad.

There is another reason why an empty car, although going from one state to the repair shops in another for the purpose of having a missing grab iron placed thereon, is within the meaning of the amendatory act approved March 2, 1903. That act applies not only to all locomotives engaged in interstate commerce, but to all cars used in connection therewith. As the engine is a car, within the meaning of the safety appliance act (Johnson v. Southern Pacific Company, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; United States v. Colorado & Northwestern Railway Company [Circuit Court of Appeals, Eighth Circuit, November 25, 1907], 157 Fed. 342), when such engine is

·engaged in interstate commerce the car or cars attached to the engine are used in connection with a car which is engaged in interstate commerce. The answer admits that the car in question here is one used by the defendant company at different times in the movement of interstate traffic, and it was therefore used on a railroad engaged in interstate commerce within the meaning of the amendatory act approved March 2, 1903.

For these reasons, the demurrer to the defendant's answer must be sustained, and, as the defendant has elected to plead no further, judgment will be entered in favor of the United States for the penalty provided in the act.