CHICAGO & N. W. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.    March 10, 1909.)

No. 2,794.

1. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CARS OUT OF REPAIR.
     The federal safety appliance act (Act March 2, 1893, c. 196, § 1, 27 Stat.
531 [U. S. Comp. St. 1901, p. 3174], as amended by Act March 2, 1903, c.
976, § 1, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 886]), includes, first,
vehicles actually moving in interstate traffic; second, such vehicles,
though empty, when moving to points for the purpose of receiving inter-
state traffic, or otherwise commercially used by the carrier; and, third,
vehicles used in connection with vehicles embraced in either of the two
former classes.  This would include cars that were out of repair, and were
being transported solely for the purpose of repair, if they were placed in
trains whose vehicles come within either of the first two classes.
     [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.*

     Duty of railroad companies to furnish safe appliances, see note to Fel-
ton v. Bullard, 37 C. C. A. 8.]

2. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—DEFECTIVE EMPTY CARS.
     The necessary movement of a defective empty car alone, for purpose of
repair only, and not in connection with any cars commercially used, does
not subject the carrier to the penalties of the acts.
     [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 766; Dec. Dig. §
254.*]

3. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—DEFECTIVE EMPTY CARS.
     A carrier may move empty cars by themselves to repair shops, for the
purpose of having them placed in condition to conform to the safety ap-
pliance act (Act March 2, 1893, c. 196, § 1, 27 Stat. 531 [U. S. Comp. St.
1901. p. 3174], as amended by Act March 2, 1903, c. 976, § 1, 32 Stat. 943
[U. S. Comp. St. Supp. 1907, p. 886]), without being guilty of a violation
of those acts while thus engaged in an honest effort to meet their require-
ments.
     [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.*]

In Error to the District Court of the United States for the District
of Nebraska.

For opinion below, see 157 Fed. 616.

C. C. Wright (B. T. White and B. H. Dunham, on the brief), for
plaintiff in error.

Luther M. Walter, Sp. Asst. U. S. Atty. (Charles A. Goss. U. S.
Atty., and A. W. Lane, Asst. U. S. Atty., on the brief), for defendant
in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and
AMIDON, District Judge.

AMIDON, District Judge.    This action was commenced by the
government to recover penalties under Act March 2, 1893, c. 196, §
1, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act
March 2, 1903, c. 976, § 1, 32 Stat. 943 (U. S. Comp. St. Supp. 1907,
p. 886).  The complaint alleges that:

"The defendant, on or about June 7, 1906, hauled on its line of railroad
one car, to wit, its own No. 69581; said car being an empty car and generally
used in the movement of interstate traffic, said car, at the time of the viola-

tion of the above act, being consigned from Omaha, in the state of Nebraska, to Council Bluffs, in the state of Iowa."

It was further alleged that when the car was so hauled the grab iron or handhold on the right-hand side of the "B" end of the car was missing. The answer admits these facts, and alleges that the defect in the car was discovered while it was in the yards at South Omaha, Neb.; that the most convenient place of repair was at the defendant's shops in Council Bluffs; that the car was empty, and was moved from Omaha to Council Bluffs for the sole purpose of being repaired. A general demurrer was interposed to this answer, and sustained. Thereupon the court found the defendant guilty, and adjudged it to pay a fine of $100 and costs, and the present writ of error is brought to review that judgment.

Section 4 of the act of March 2, 1893 (27 Stat. 531), is as follows:

"That from and after the 1st day of July, 1895, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab-irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

The amendment of 1903 (32 Stat. 943) had three objects: First, to extend the safety appliance act to traffic in the District of Columbia and the territories; second, to remove the doubt as to the meaning of the term "cars," as used in the act, created by the decision of this court in the Johnson Case, 117 Fed. 462, 54 C. C. A. 508; third, to enlarge the scope of the safety appliance act, so as to include not only "the cars, locomotives, tenders, and similar vehicles," etc., therein referred to, but also to embrace "all other locomotives, tenders, cars, and similar vehicles used in connection therewith."

Reading these statutes together, as they have been interpreted by the courts, they include, first, vehicles actually moving interstate traffic; second, such vehicles, though empty, when moving to points for the purpose of receiving interstate traffic, or otherwise commercially used by the carrier; and, third, vehicles used in connection with vehicles embraced in either of the two former classes. This would include cars that were out of repair, and were being transported solely for the purpose of repair, if they were placed in trains whose vehicles come within either of the first two classes.

The shovel car involved in the Schlemmer Case, 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681, "was part of a train on its way through Pennsylvania from a point in New York." The same is true of the cars referred to in United States v. St. Louis, I. M. & S. R. Co. (D. C.) 154 Fed. 516. In fact, so far as we have been able to examine the authorities, the cases in which carriers have been held liable for moving defective cars over their lines for purposes of repair have all presented the feature that such cars were moved in trains whose other vehicles were actually engaged in interstate commerce, and were used "in connection with" such cars, within the meaning of the last clause of section 1 of the act of 1903.

The present case, upon a fair construction of the pleadings involves a movement of the defective car alone for purposes of repair only.

In our judgment, neither the car nor the locomotive which hauled it was used in interstate commerce, within the meaning of section 4 of the act of 1893, or "in connection with" any locomotive, tender, car, or similar vehicle engaged in such commerce within the provision of the act of 1903.

The object of the safety appliance statutes was manifestly to require interstate carriers to maintain their rolling stock in a certain condition of safety. It could not have been the intention of Congress to impose this duty upon carriers, and at the same time deprive them of the only practical method of meeting its requirements. Rolling stock must necessarily become defective, within the terms of these statutes, both by use and by accident. Repair shops cannot be kept on wheels. Such shops cannot be brought to the defective vehicle. The only practical method of railroading requires that such vehicles, when out of repair, shall be taken to the shops; and if they are wholly excluded from commercial use themselves, and from other vehicles which are commercially employed, they do not fall within any of the classes covered by the safety appliance acts. A carrier may move one or more cars by themselves to repair shops, for the purpose of having them placed in a condition to conform to the safety appliance acts, without being guilty of a violation of those acts while thus engaged in an honest effort to meet their requirements.

The judgment must be reversed, and the cause remanded, with directions to grant a new trial; and it is so ordered.