SIEGEL v. NEW YORK CENT. & H. R. R. R.

(Circuit Court. M. D. Pennsylvania. February 16, 1910.)

No. 152, October Term, 1908.

MASTER AND SERVANT (§ 111*)—INJURIES TO SERVANT—FAILURE TO FURNISH PROPER APPLIANCES—SAFETY APPLIANCE ACT—CAR WHEN NOT USED IN INTERSTATE COMMERCE.

Where the coupling apparatus of a car engaged in interstate commerce was found, on inspection, to be defective, and while it was being shifted about for the purpose of sending it to a shop for repairs a brakeman was injured in an accident that would not have occurred but for the crippled condition of the coupling apparatus, the master was not liable under safety appliance acts (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]; Act April 1, 1896, c. 87, 29 Stat. 85; Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1909, p. 1143]).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217; Dec. Dig. § 111.*]

At Law. Action by Anna Mary Siegel against the New York Central and Hudson River Railroad. Motion by plaintiff for a new trial. Rule discharged.

C. E. Sprout, for plaintiff.
Seth T. McCormick, for defendant.

ARCHBALD, District Judge. This is an action for the death of Roy Siegel, which occurred on November 23, 1907, and was caused, as it is claimed, by the negligence of the defendant company. The plaintiff is the widow, and the action is brought in behalf of herself and her minor child, under the statutes of Pennsylvania, which allow of a recovery in the case of death caused by unlawful violence or negligence. The deceased was a brakeman in the employ of the defendant company, and his death occurred while he was assisting in that capacity in shifting an empty "gondola" car in the railroad yard at Avis, Pa. This car arrived at Avis the night before, in a train of "empties" from Corning, N. Y., and was intended to be taken with others to Clearfield, Pa., to be loaded with coal and returned to Corning again; but, upon inspection it was found to need draft bolts, and was chalk-marked to this effect, and put on a track (No. 6) where light repairs of this character are attended to. These draft bolts hold up the draft timbers to the center sill of the car, and the draft timbers in turn hold the draw heads or couplers, which are located between them. If the draft bolts are gone the draft system is weakened; but they are readily supplied, which is done in the yard, without sending the car to the repair shops. While standing on this track, however, it was discovered by another inspector the next morning that

the end sill was broken. The replacing of an end sill is a much more serious matter, and crippled cars, which require heavy repairs of this kind, are "shop-marked" accordingly and put on switch No. 8, from whence they are taken to the repair shops at Jersey Shore, a mile or more distant. The car in question was therefore re-marked to show its crippled condition, but was left standing, for the time being, on the light repair track in the midst of others. About noon of the day of the accident a switching crew, of which the deceased was a member, went to the railroad yard to make up out-going trains, and this car, being on the light repair track, was supposed to have been fixed and to be in shape for use, the fact that it was "shop-marked" for heavy repairs not being noticed. There were about 30 cars on this particular track, of which 14 were between it and the engine. These were all hauled out of the switch in a string and dropped back onto track No. 15, and while this was being done the defective sill at the head end of the car gave way under the strain, letting down the whole coupling arrangement. The car in this disabled condition had to be got rid of, and in order to cut it out from the others and put it in on the heavy repair track, it was coupled up to the car in front of it, by means of a brake chain, which the deceased assisted in rigging, and in this situation it was drawn out, with the others ahead of it, onto the "lead" track to be let down onto track No. 8, where it belonged and was marked for. After the string of cars with the crippled car at the end had cleared the switch, the deceased, who was sitting on the next one to it, got down onto the ground and gave the signal to the engine to stop, and then, immediately, while the cars were still moving slowly, went in between the crippled car and the one ahead of it, to uncouple them, with the result that he was caught and crushed between the two (there being nothing to keep them apart), and dropped to the ground dead, with the pin in his hand when they slackened up and separated. The cars being coupled by means of the chain, it was necessary to go in between the two to uncouple them. But this should have been done after they had come to a standstill. It did not have to be done while they were in motion, and it was the height of rashness to undertake it. These facts appearing by the undisputed evidence, a verdict for the defendant was directed.

No negligence on the part of the company having been shown, there can be no question as to the propriety of this disposition. The plaintiff relies on the acts of Congress known as the "Safety Appliance Acts" (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]; Act April 1, 1896, c. 87, 29 Stat. 85; Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1909, p.1143]); the contention being that the duty imposed on the company to have its cars "equipped with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars," is an absolute one; and that as soon as the car in question, by the giving way of the sill and the letting down of the couplers, ceased to meet this requirement, the company was prohibited from moving it in conjunction with other cars from the place where it was, no matter where that might be, or what might be the purpose of doing

so. The company, it is said, were bound to repair it on the spot, and if they did not, and any one was injured, they must bear the consequences. But reason is the life of the law. Co. Litt. 319b. And nothing, as it is said, is law that is not reason. Powell, J., in Coggs v. Bernard, 2 Ld. Ray. 911. And by every consideration, the statutes here, the same as in any case, are to have a sensible construction. United States v. Kirby, 7 Wall. 482, 19 L. Ed. 278. And the difficulties, not to say absurdities, to which the doctrine contended for would lead, are obvious. This is not to say that the statutes in question are satisfied by the exercise of reasonable diligence on the part of a common carrier by railroad, to see that its cars are equipped as there required (St. Louis, Iron Mount. & S. R. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Chic., Milwaukee & St. Paul, R. R. v. United States, 165 Fed. 423, 91 C. C. A. 373, 20 L. R. A. [N. S.] 473; Atlantic Coast Line R. R. v. United States, 168 Fed. 175, 94 C. C. A. 35); but only that a reasonable interpretation is to be given these acts in determining what is required and when it is required of such carriers. In the present instance, the acts do not apply, because, rightly considered, the case is not within them. To come within their terms, not only must the carrier be engaged in interstate commerce, but the particular car must, at the time, be in the condition of being hauled or used in moving interstate traffic. "It shall be unlawful," as it is declared (Act March 2, 1893, § 2, 27 Stat. 531), "for any such carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped," etc. But the car here, instead of being so used, had been condemned and put out of use because it was crippled, and was being shifted on that account from where it was, in the midst of other cars, which were needed to make up out-going trains, to the heavy repair track, so that the existing defects could be properly remedied. It is true that it was being shifted as one of a string of cars, and it might have been switched by itself after the others had been hauled away from it. But it still would have had to be coupled to and uncoupled from the engine, by which it was being drawn, which could only have been done by going in between the two, with the same exposure to danger; and this circumstance therefore is of no significance. The plaintiff's contention, as already stated, is that the car should have been repaired on the spot, without being stirred from where it was, and, provided the car is actually engaged in moving interstate traffic, there are cases that sustain this view. St. Louis, etc., R. R. v. Delk, 158 Fed. 931, 86 C. C. A. 95; Junction R. R. v. King, 169 Fed. 372, 94 C. C. A. 652. But that, in my judgment, is not the law. Chic. & N. W. R. R. v. United States, 168 Fed. 236, 93 C. C. A. 450, 21 L. R. A. (N. S.) 690; United States v. Ill. Central R. R., 170 Fed. 542, 95 C. C. A. 628. And in any event the car must be so actually employed (St Louis, etc., R. R. v. Delk, 158 Fed. 931, 86 C. C. A. 95), if for no other reason than that the act says so, there being no attempt to prescribe what appliances there shall be when this is not the case. No doubt a defective car cannot be made up into a train with others which are so engaged even

for the purpose of taking it for repair to a more convenient place. United States v. St. Louis R. R. (D. C.) 154 Fed. 516; United States v. Balt. & Ohio R. R. (D. C.) 170 Fed. 456. But it was expressly held in Chicago & N. W. R. R. v. United States, 168 Fed. 236, 93 C. C. A. 450, 21 L. R. A. (N. S.) 690, reversing (D. C.) 157 Fed. 616, that the necessary movement of a defective car by itself, for the purpose of repair only, and not in conjunction with cars commercially used, does not subject the carrier to the penalties of the law. Repair shops, as it is pertinently said, cannot be kept on wheels; and a carrier may therefore move one or more defective cars by themselves to such shops, for the purpose of having them put in a condition to conform to the requirements of the safety appliance acts, provided such cars are excluded from commercial use themselves, and from connection with other cars which are being used commercially. And much more may a crippled car be shifted about upon the tracks of a railroad yard, in order to separate it from others, and put it where it can be properly attended to. Taylor v. Boston & Maine R. R., 188 Mass. 390, 74 N. E. 591; United States v. Rio Grande Western R. Co., 174 Fed. 399;[1] St. Louis, etc., R. R. v. Delk, 158 Fed. 931, 86 C. C. A. 95, per Lurton, J. The law requires nothing so impracticable as that it should be allowed to stand blocking the way wherever it may chance to become crippled, until the means for remedying the defects can be brought to it and the defects cured. It may be, in the present instance, that until the car in question became crippled, it was engaged, though empty, in moving interstate traffic within the meaning of the acts of Congress, having delivered its load at Corning, N. Y., and being on its way to Clearfield, Pa., to be loaded and returned to Corning again, the mere temporary stoppage in transit in yards at Avis, not relieving it of the character which it so had. Johnson v. Southern Pacific R. R., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; St. Louis, etc., R. R. v. Delk, 158 Fed. 931, 86 C. C. A. 95. But the loss of its couplers having practically disabled it and put it out of commission, and the car, after that, being shifted solely for the purpose of getting it out from the midst of the others, and putting it in the way of being taken care of, from the moment that this was recognized and acted upon, it lost any interstate character, which it may have had before, and ceased to be hauled or used in moving interstate traffic, so as to make the company liable for injuries received because of its defective condition.

As this disposes of the case adversely to the plaintiff, no failure of duty on the part of the defendant company being shown, it is not necessary to consider whether the deceased was guilty of contributory negligence, by which the action would be barred. In any event a verdict for the defendant was correctly directed, and the rule for a new trial must be discharged.

---

[1] 98 C. C. A. 293.