G. RICORDI & CO., Inc., v. COLUMBIA GRAPHOPHONE CO.

(District Court, S. D. New York. May 29, 1919.)

1. COPYRIGHTS ☞21—AUTHORS ENTITLED—ALIENS—"DOMICILED IN UNITED STATES."

A native Canadian, who came to New York with the intention of remaining, bringing practically all of his property, *held* to be domiciled in the United States, within Copyright Act March 4, 1909, § 8 (Comp. St. § 9524), and entitled to the benefit of the act.

2. COPYRIGHTS ☞38—MUSICAL COMPOSITIONS—JOINT AUTHORSHIP.

The music is an inseparable part of a copyrighted song, and the copyright is valid where the words were written by an American citizen, although the melody was composed by an alien, who was not eligible to obtain a copyright under Copyright Act March 4, 1909, § 1(e), being Comp. St. § 9517.

3. COPYRIGHTS ☞21—MUSICAL COMPOSITIONS—ALIEN COMPOSERS.

The proviso to Copyright Act March 4, 1909, § 1(e), being Comp. St. § 9517, denying the right to copyright a musical composition to a foreign author or composer, unless his country grants similar rights to American citizens, is subject to exception in favor of foreigners domiciled in this country, as provided in section 8 (section 9524).

In Equity. Suit by G. Ricordi & Co., Incorporated, against the Columbia Graphophone Company. Decree for complainant.

See, also, 256 Fed. 699.

Nathan Burkan, of New York City, for plaintiff.

W. Laird Goldsborough, of New York City, for defendant.

MANTON, Circuit Judge. The plaintiff seeks to succeed in this suit for infringement of copyright, claiming that it, as assignee of a musical composition, duly copyrighted, entitled "Dear Old Pal of Mine," has obtained rights which have been violated by the defendant. The defendant manufactures sound records, and has manufactured and sold records of this musical composition.

Subdivision (e) of section 25 of the Copyright Act (Act March 4, 1909, c. 320, 35 Stat. 1081 [Comp. St. § 9546]) provides as follows:

"Whenever the owner of a musical copyright has used or permitted the use of the copyrighted work upon the parts of musical instruments serving to reproduce mechanically the musical work, then in case of infringement of such copyright by the unauthorized manufacture, use or sale of interchangeable parts, such as discs, * * * for use in mechanical music-producing machines adapted to reproduce the copyrighted music, * * * in a civil action an injunction may be granted upon such terms as the court may impose."

Subdivision (e), § 1, of the Copyright Act (section 9517) provides:

"(e) To perform the copyrighted work publicly for profit if it be a musical composition and for the purpose of public performance for profit; and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: Provided, that the provisions of this act, so far as they secure copyright controlling the parts of instruments serving to re-

produce mechanically the musical work, shall include only compositions published and copyrighted after this act goes into effect, and shall not include the works of a foreign author or composer unless the foreign state or nation of which such author or composer is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States similar rights."

### Section 8 (section 9524) provides:

"That the author or proprietor of any work made the subject of copyright by this act, or his executors, administrators, or assigns, shall have copyright for such work under the conditions and for the terms specified in this act: Provided, however, that the copyright secured by this act shall extend to the work of an author or proprietor who is a citizen or subject of a foreign state or nation, only: (a) When an alien author or proprietor shall be domiciled within the United States at the time of the first publication of his work; or (b) when the foreign state or nation of which such author or proprietor is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States the benefit of copyright on substantially the same basis as to its own citizens."

The thought resulting in this musical composition was that of Lieut. Gitz Rice, and the testimony is that he discussed, with one Harold Robe, the possibilities of a refrain of a song which he had conceived for the purpose of having the same written in the form of a ballad. He played some of this melody on the piano to Robe, who approved it and stated it was appropriate for a ballad. Robe then wrote the words which are found in the song "Dear Old Pal of Mine," and prepared the lead sheet of the music, containing the form of the rhythm for the verse of the song. Robe submitted these words, under the title "Dear Old Pal of Mine," with the lead sheet, to Rice, who accepted this form of rhythm as suggested, and then wrote the music in that rhythm to Robe's verse. Thus they collaborated and finished this musical composition. Within a few days it was played upon the piano, and the music thereof was taken down in musical notation upon a sheet of paper by Mr. Polla and arranged by him for the piano. This was done in February, 1918, and was afterwards assigned to the plaintiff. It was published for the first time in March, 1918, and was copyrighted in the name of the plaintiff, a New York corporation.

[1] Gitz Rice is a Canadian by birth. He enlisted in the First Canadian contingent of the British army during the war. He was wounded and gassed in November, 1916, and was returned to Montreal to be discharged from military service. In December, 1918, he was placed upon the reserved list, with the privilege of returning to civil occupation. In his testimony, he says he took advantage of this opportunity, and with the intent of making New York City his domicile and future residence he came to this city, where he resided on March 8, 1918, at the time of the first publication of the song. Before becoming a soldier, he lived in Canada, where he was engaged in the business of selling musical instruments. Before going into the army he closed up his business. He arrived in New York in October, 1917, where he took up his residence. It appears that, in response to an invitation given by the British Recruiting Mission, he, without pay, made speeches while clad in the uniform of the Canadian army,

in various parts of New York City, aiding or attempting to aid enlistments. While doing this, however, he declares he followed his newly chosen profession as a composer of music. He opened his bank account in New York, joined New York clubs, and became engaged to marry a New York lady. When he came here, he brought with him all his personal belongings and effects, and he had no property in Canada, except some stock in a company, which was his father's in his lifetime, and from which he is now receiving dividends. In March, 1918, he played in "Getting Together," a propaganda play, to aid recruiting. For this he was paid a salary by the manager of the play. His efforts to stimulate recruiting ceased in December, 1918.

To constitute a new domicile, two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. Among the circumstances usually relied upon to establish the residence is the intent of the person, which may be obtained from his declarations, payment of taxes, and his course of conduct, both socially and in business, while in the new domicile. Mitchell v. U. S., 21 Wall. 350, 22 L. Ed. 584.

I think the conduct and life of Gitz Rice when he came to New York indicated clear intention to make New York City his domicile. I do not find that his declaration to do so, followed by his conduct and what he did in New York, is negatived in any way by the defendant. The proof satisfies me that Gitz Rice and Robe collaborated, and developed and composed this musical composition. The copyright had been granted for a musical composition. It has been successful, and some 350,000 copies have been sold.

[2] In Standard Music Roll Co. v. Mills, Inc., 241 Fed. 360, 362, 154 C. C. A. 240, 242, it was said:

"Whenever, therefore, a song is now copyrighted as a musical composition, both the words and the music are protected; and, as these do not constitute an indivisible whole, the owner may limit the use of his copyright either to the music or to the words, or he may allow both to be used."

The question presented is whether, assuming that under section 1, subdivision (e), of the Copyright Act above quoted, a copyright could not be obtained for a musical composition composed by Gitz Rice, is the case altered by reason of the fact that the words were written by Harold Robe, an American citizen?

Under section 53 of the Copyright Act (section 9574), the Register of Copyrights is authorized to make, subject to the approval of the Librarian of Congress, rules and regulations for the registration of claims to copyright as provided by the act. Rule 10 defines musical compositions as:

"Including vocal and all instrumental compositions, with or without words. But when the text is printed alone, it should be registered as a 'book,' not as a 'musical composition.'"

Rule 9 provides:

"Ordinary songs, even when intended to be sung from the stage in a dramatic manner, or separately published songs from operas and operettas, should be registered as musical compositions, not dramatico-musical compositions."

Section 3 of the Copyright Act (section 9519) provides:

"All the copyrightable component parts of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope of such copyright. The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this act."

In Bentley v. Tibbals, 223 Fed. 254, 138 C. C. A. 489, it is said that copyrighted matter may be included with uncopyrighted matter and not lose the protection of the statute.

Section 3 of the act provides protection of all the copyrightable component parts of the thing copyrighted. Standard Music Roll Co. v. Mills, 241 Fed. 360, 154 C. C. A. 240; New Fiction Publishing Co. v. Star Co. (D. C.) 220 Fed. 994.

The musical composition copyrighted here is a song, and it is said in Grove's Dictionary of Music and Musicians, that:

"A song may be defined as a short metrical composition, whose meaning is conveyed by the combined force of words and melody. The song, therefore, belongs equally to poetry and music; * * * but the musical forms and structures of songs are so much determined by language and metre, and their content by the emotions the words express, that their poetic and literary qualities cannot be put aside."

It is evident that, in this musical composition, the music became an inseparable part of the composition, and was not an independent composition. This has been judicially determined in Hatton v. Kean, 7 C. B. N. S. 268, where it was said:

"The musical composition here was merged in and became part of the entertainment designed and adapted by the defendant."

It was also made part of the British Copyright Act of 1911, where it was said:

"For the purpose of this provision [copyright of mechanical contrivances] a musical work shall be deemed to include any words so closely associated therewith as to form part of the same work."

Therefore it seems that, since this musical composition is the result of joint authorship, Robe having composed part of it, it was the subject for which a copyright could be granted, and should be protected under our act. It should be treated as if he, and not his collaborator in authorship, Gitz Rice, was the sole author thereof. A joint labor in carrying out a common design, even though each does not contribute the same amount of labor and words to the execution of the design, or even if an author should complete a play upon a design of his own, it might be a joint ownership, if another should come and suggest alterations which he agreed to and adopted. Coppinger on the Law of Copyrights (4th Ed.) 110; Maurel v. Smith (D. C.) 220 Fed. 195.

In my opinion, the copyright as granted may also be sustained for the reason that Gitz Rice was domiciled in this country at the time of his application for the copyright and the publication of the composition.

[3] If there is ambiguity between section 1, subdivision (e), and section 8, subdivision (b), we may find enlightenment as to the legislative intent in the report of the committee which drafted the act and had charge of its passage. This may be used in forming a conclusion. U. S. v. Chicago, etc., Co. (D. C.) 157 Fed. 618; Mosle v. Bidwell, 130 Fed. 334, 65 C. C. A. 533. The committee's report, No. 2222, under date of February 22, 1909, p. 9, is as follows:

"It is not the intention of the committee to extend the right of copyright to the mechanical reproductions themselves, but only to give the composer or copyright proprietor the control, in accordance with the provisions of the bill, of the manufacture and use of such devices. It is not the intention of the committee to grant to citizens or subjects of foreign countries any rights under the proposed copyright law which such countries do not give to American authors and composers; and for that reason, in this paragraph, which refers to musical compositions, we have the proviso that the rights given shall *not* include the works of a foreign author or composer unless the foreign state or nation of which such author or composer is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States similar rights; and *in section 8 of the bill we provide for reciprocity regarding copyrights generally, excepting only, in the last-named provision, an alien who is domiciled within the United States at the time of the first publication of his work.*"

I think it is clear that Congress intended that domiciled foreigners are entitled to the benefit of the provisions of subdivision (e) section 1, of the act, and that it intended only to exclude subjects or citizens of countries denying similar protection to our citizens. In other words, it intended that domiciled foreigners should receive the same protection and have the same rights as American citizens. An infringement is admitted if it be held that the copyright is good and should be protected. The correspondence indicates clearly that the defendant took the position that the copyright was void and afforded no protection to plaintiff. As indicated above, I think the position assumed by the defendant was erroneous, and a decree is granted for the plaintiff.

The decree should provide an injunction restraining the defendant from manufacturing, using, or selling sound records adapted to reproduce the composition "Dear Old Pal of Mine" until the defendant shall have served notice of its intention to use the composition in the manner prescribed by section 25, subdivision (e) of the Copyright Act, and until it shall have paid the damages awarded by this decree; further, it should provide for an accounting. An allowance of counsel fee of $1,000 will be awarded.