## UNITED STATES v. HECKMAN (No. 89).[1]

FUR SHEEPSKINS NOT WOOL.

Paragraph 360, tariff act of 1897, must be taken to refer to skins with wool upon them of such character and quantity that it would be profitable to remove this wool from the skins; and there being no question here that the importation of raw sheepskins was not of that kind, but was of skins the wool upon which could not be removed with profit, following the rule established by a long-continued practice in the customs administrative service, these were free of duty under paragraph 562, tariff act of 1897.—United States v. Bennett (66 Fed. Rep., 299), approved; Lawrence Johnson & Co. v. United States (124 Fed. Rep., 1000), and other cases distinguished.

United States Court of Customs Appeals, February 13, 1911.

TRANSFERRED from United States Circuit Court for District of Massachusetts, Abstract 21120 (T. D. 29715).

[Affirmed.]

*D. Frank Lloyd,* Assistant Attorney General (*John A. Kemp* on the brief), for the United States.

*Searle & Pillsbury* (*William E. Waterhouse* of counsel) for appellee.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

The importation in question of raw Australian sheepskins with the wool on, was made at the port of Boston in 1908, and consists of two lots of skins, one containing 12 bales and the other 25 bales. The appraiser reported that on the 12-bale lot the wool was about an inch in length and on the 25-bale lot about three-quarters of an inch. These skins were assessed for duty by the collector under paragraph 360 of the tariff act of 1897 as "wools on the skin," and were claimed by the importers to be entitled to free entry under paragraph 561 of the same act as "furs, undressed," or under paragraph 562 as fur skins not dressed in any manner.

The respective paragraphs are as follows:

360. The duty on wools on the skin shall be one cent less per pound than is imposed in this schedule on other wools of the same class and condition, the quantity and value to be ascertained under such rules as the Secretary of the Treasury may prescribe.

561. Furs, undressed.

562. Fur skins of all kinds not dressed in any manner and not specially provided for in this act.

The appellees appealed to the Board of General Appraisers, who found that the skins—

are what are known as short-wool skins selected and imported specially to be made into fur articles, principally fur coats,

and further said that it had been—

satisfactorily established that said skins are in all material respects similar to those which were subject of the board's decisions in Abstract 17754 (T. D. 28634), Abstract 19272 (T. D. 29119), and Abstract 19545 (T. D. 29229),

and

since the Government has not appealed from the board's decisions holding skins of this character to be free, we follow the rulings in the cases cited and sustain the protests.

[1] Reported in T. D. 31318 (20 Treas. Dec., 316).

By referring to the cases cited it appears therein that the importations had in each case been sheepskins from China with the wool on, concerning which the board found that the skins were to be used for fur purposes exclusively, were suitable only for such purposes, and that it would not be profitable to separate the wool from the skins and use the same as wool.

By reference to these decisions and others of the board on the same or similar statutes and relating to similar importations, it is found that they are based upon the holding in United States *v.* Bennett, Circuit Court of Appeals (66 Fed. Rep., 299), which was decided in 1895, construing paragraph 387 of the act of October 1, 1890, which is as follows:

387. Wools on the skin shall pay the same rate as other wools, the quantity and value to be ascertained under such rules as the Secretary of the Treasury may prescribe.

The importer had claimed free entry under paragraph 588 of the same act, which places on the free list "fur skins of all kinds not dressed in any manner."

The board had affirmed the collector's assessment, and the circuit court had reversed the board's decision. The importation was raw Angora goatskins.

In the Circuit Court of Appeals it was found that these skins—

with the wool on are used exclusively as fur skins, and for no other purpose than as fur,

and that—

it was not profitable to separate the hair from the skins and to use the hair as wool.

The court further said these skins were—

for all commercial uses undressed fur skins, and, while they are also literllay undressed wool skins, or skins with the wool on, their classification for tariff purposes should not be under the head of wools, because practically they are not such; while bearing the name of wools, they are not the wools to which the wool schedule relates, and it is too close an adherence to literalism to classify them as something they are not—

and reversed the judgment of the Circuit Court and affirmed the decision of the board.

Under the law then in force the hair, or wool, whichever it might be, of the goat as well as the sheep was in terms dutiable, as was also the case under the tariff act of 1897.

No effort seems to have been made to review this decision of the Circuit Court of Appeals, and it has been followed by the board in numerous cases aside from those especially hereinbefore mentioned without, so far as has been called to our attention, any appeal having been taken by the Government therefrom.

In the Bennett case the length of the hair or wool on the skins was not mentioned, and the case turns upon the existence of two facts: (*a*)

That the skins with the wool on were used as fur skins exclusively. (b) That it was not profitable to separate the hair from the skins and use the same as wool.

Reference may be had to T. D. 10324, T. D. 13864, T. D. 18083, T. D. 20244, and T. D. 23247, concerning which the only comment we desire to make is that in a general way they all uphold the proposition that goat and lamb skins imported exclusively for fur purposes, when it appears that it is not profitable to separate the hair or wool from the skins, have been admitted free of duty under like statutes then in force as fur skins.

The Treasury Department under date of October 27, 1892, issued the following letter to collectors and other officers of the customs:

The department having, on the 23d of August last, designated a committee to establish a dividing line between shearling sheepskins, the wool on which has no commercial value and may be admitted free, and those on which the wool is sufficiently long to be subject to classification and, consequently, to duty, said committee on the 19th instant submitted the following report, which is hereby adopted as the rule for guidance of custom officers in the classification of imported shearling sheepskins:

"The wool on all shearlings has a commercial value, but, from the investigations made by this committee, we are of the opinion that wool on shearling sheepskins which does not exceed one-quarter of an inch in length on the body of the pelt is of such little value that the wool should be passed free of duty, and that all shearling skins where the wool exceeds one-quarter of an inch in length should be subject to duty."

O. L. SPAULDING, Acting Secretary.

From these decisions and the foregoing letter of the Treasury Department it is apparent that it has for many years been considered that there is a limit in length below which the wool on sheepskins, although perhaps strictly speaking in terms, dutiable under the wording of the statute, yet has been held not dutiable, because as wool it possesses no merchantable value when the expense of removing it from the skin is taken into consideration.

The Government contends here, however, that the Bennett case has been, in effect, overruled and cites Lawrence Johnson & Co. v. United States (124 Fed. Rep., 1000); Lawrence Johnson & Co. v. United States (140 Fed. Rep., 118); Lawrence Johnson & Co. v. United States (159 Fed. Rep., 189).

All of these cases relate to skins of the cabretta, which is a cross between a sheep and a goat. These cases are all to be distinguished from the Bennett case by the fact that in none of them does it appear that these skins with the hair or wool on the same were selected and imported for the purpose of using them exclusively as fur skins, nor does it appear that it would not be commercially profitable to separate the hair or wool from the skins and use the same for wool purposes, and our attention has been called to no case that, when considered, seems to be inconsistent with the Bennett case.

In the case at bar the board has found that the importation is short wool skins selected and imported especially to be made into fur articles, principally fur coats. They further say that the skins are in all material respects similar to those which were subject to certain of their decisions which we have referred to. This, amongst other things, we understand, means that the quantity of wool on the skins in question is so small that it would not be profitable to separate the wool from the skin and use it for wool purposes.

It is not claimed in argument by the Government that the finding of the board in this case is not supported by the evidence. The result is that the judgment in this case must be controlled by the ruling in the Bennett case, the reasoning of which is convincing to us, unless there is merit in the contention of the Government that the words "not specially provided for in this act," which were added to paragraph 562 of the act of 1897, and were not in the corresponding paragraph of the act of October 1, 1890, require a different conclusion, the claim being that the words "wools on the skin," in paragraph 360, specially provides for these skins so as to exclude them from paragraph 562.

It already appears that the Treasury Department has declared that wool not exceeding one-quarter of an inch in length upon the body of the sheepskin, regardless of the use made of the same, is not dutiable as wool because of so little value, and further that it has for a long time acquiesced in the holding of the court and subsequent rulings of the board that when the wool is of greater length if the skins carrying the same are used exclusively for fur purposes and the quantity of wool so small that it would not be profitable to separate the wool from the skins and use it as wool, such skins are not the "wools on the skin" within the meaning of paragraph 360 of the act of 1897. Such acquiescence in view of the classification by the board of such skins for so long a time is equivalent to an adoption of such construction by the Treasury Department of paragraph 360 of the act of 1897 and the equivalent paragraphs in former tariff acts.

The principle is well settled that—

The reenactment by Congress without change of a statute which had previously received long and continued executive construction is an adoption by Congress of such construction. United States *v.* Falk (204 U. S., 143, 152).

The addition in the act of 1897 of the words "not specially provided for in this act" to paragraph 588 of the act of October 1, 1890, would not, therefore, refer to sheepskins with the wool on, like the importations in this case, because the courts, the board, and the Government have held them to be fur skins and entitled to free entry.

Such skins are not within the fair construction of paragraph 360 of the act of 1897 in view of the long-continued construction given thereto and to corresponding paragraphs of the earlier acts. The skins with

the wool on referred to in that paragraph are skins carrying such a quantity and character of wool as is valuable in itself as wool after being separated from the skin, and which it is profitable to remove from the skin on which it grew. It then becomes capable of entering into competition with domestic wool which the purpose of paragraph 360 is to protect.

The importation in this case, however, does not enter into such competition, but is for tariff purposes fur skins, undressed, regarding which it is the policy of the law to admit free of duty.

The decision of the board is *affirmed.*