## UNITED STATES *v.* G. FALK & BROTHER.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 259.   Argued December 4, 1906.—Decided January 7, 1907.

While the primary purpose of a proviso is to qualify only the provision
of the statute to which it is appended a presumption of such purpose
will not prevail against a demonstrative test that the legislative intent
was that the proviso was of general application.

The Attorney General having construed the proviso of § 50 of the Tariff
Act of 1890 as not restricted to the matter immediately preceding it,
but as of general application, and this construction having been followed
by the executive officers charged with the administration of the law,
Congress will be held to have adopted that construction in the enactment
of § 33 of the Tariff Act of 1897 and to have made no other change except
to require as the basis of duty the weight of merchandise at the time of
entry instead of its weight at the time of its withdrawal from warehouse.

The proviso in § 20 of the Customs Administrative Act only refers to cases
in which a change in the rate of duty has been made while the merchan-
dise is in bonded warehouse and not to difference in weight.

145 Fed. Rep. 484, reversed.

THE facts are stated in the opinion.

*Mr. J. C. McReynolds,* Assistant Attorney General, for the
United States:

The history of legislation on the subject shows the purpose of
Congress to impose duties on imports according to their weight
when entered for warehousing.   Tariff Act of 1854; Act of 1866,
Rev. Stat. § 2970; *Merritt* v. *Cameron,* 137 U. S. 542.   The
Customs Administrative Act of June 10, 1890, contained
nothing inconsistent with the long established practice.

To require payment of duties upon warehoused imports ac-
cording to their weight at entry is not inequitable.

The statutes require one who enters a cargo of tobacco for
consumption to pay in cash according to its weight then, not-
withstanding the presence of a large percentage of absorbed
sea-water.   If on the same date a competitor, for his conven-
ience and profit, enters a similar cargo for warehousing and

secures three years within which to pay charges, no good reason appears why he should obtain the further advantage of eliminating the sea-water as an element in the reckoning.

The proviso in section 33, act of July 24, 1897, is of general application. *Robertson* v. *Downing*, 127 U. S. 607; *United States* v. *Healy*, 160 U. S. 136; *United States* v. *Whitridge*, 197 U. S. 135; *United States* v. *Downing*, 146 Fed. Rep. 56, 59; *United States* v. *Shaw*, 141 Fed. Rep. 469.

Section 20, act June 10, 1890, as amended in 1902, relates to rate of duty and not time when weight shall be ascertained. *Merritt* v. *Cameron*, 137 U. S. 542; *Saltonstall* v. *Russell*, 152 U. S. 628, 633.

*Mr. John G. Carlisle*, with whom *Mr. Edward S. Hatch* and *Mr. J. Stuart Tompkins* were on the brief, for respondents:

Duties at the rate of $1.85 per pound are applicable only to the amount of tobacco received, and cannot lawfully be imposed on water which is never entered for consumption and which forms no part of the taxable subject. *Seeberger* v. *Wright & Lawther Co.*, 157 U. S. 183; *Lawder* v. *Stone*, 187 U. S. 281, and cases reviewed; *Marriott* v. *Brune*, 9 Howard, 619.

Under the provisions of section 20 of the Custom's Administrative Act of June 10, 1890, as amended, only such duties should be levied on warehouse goods as would be payable on the goods if imported at the time of withdrawal. *Fabbri* v. *Murphy*, 95 U. S. 191; *Paris* v. *Allen*, T. D. 14689, G. A. 2411; *Hartranft* v. *Oliver*, 125 U. S. 525; *United States* v. *Goodsell Co.*, 84 Fed. Rep. 439; *Oppenheimer* v. *United States*, 90 Fed. Rep. 796; *Brown* v. *Maryland*, 12 Wheat. 419, 442; *The Brig Concord*, 9 Cranch, 387.

The proviso appended to § 33 of the Tariff Act of July 24, 1897, applies only to merchandise imported before the date when that act took effect. *Minis* v. *United States*, 15 Pet. 423; *United States* v. *Dickson*, 15 Pet. 141; *United States* v. *Slazenger*, 113 Fed. Rep. 525; Endlich on Interp. of Stat., sec. 186; *In re Downing*, 56 Fed. Rep. 470; *In re Schilling*, 53 Fed. Rep.

81; *Am. Net & Wire Co.* v. *Worthington,* 141 U. S. 468; *United States* v. *Union Pac. R. R. Co.,* 91 U. S. 72.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This case involves the question whether, upon withdrawal of imports from a bonded warehouse, duties should be collected according to their weight then or upon their greater weight when entered and imported into the country, the loss having been occasioned by evaporation of moisture.

The merchandise in question was leaf tobacco imported into the port of New York, a part before and a part after July 24, 1897. It was entered under bond for warehousing without the payment of duty and withdrawn from warehouse after the present tariff act went into effect, and was assessed by the collector for duty on the basis of weight at the time of its entry. The importers, Falk & Brother, protested and appealed from the decision of the collector to the board of general appraisers. The board affirmed the ruling of the collector on its opinion in *In re Schmidt,* G. A. 4214, T. D. 19715. Falk & Brother then instituted proceedings for review before the Circuit Court for the Southern District of New York, and that court sustained the decision of the board of appraisers. 145 Fed. Rep. 574. The Circuit Court of Appeals reversed the Circuit Court. 146 Fed. Rep. 484.

The contention of the importers is that the merchandise is subject to duty under the provisions of Schedule F of the act of July 24, 1897, based upon weight at the time of *withdrawal* from bond for consumption, under the provisions of section 50 of the act of October 1, 1890. It is contended that the proviso of the latter act has not been repealed but is in full force and effect, and is applicable to merchandise entered in bond subsequent to the passage of the act of July 24, 1897. The board of appraisers held that the proviso of section 50 of the act of 1890 was repealed by section 33 of the act of 1897.

Those sections are, respectively, as follows:

"Sec. 50. That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to no other duty upon the entry or the withdrawal thereof than if the same were imported, respectively, after that day: *Provided*, That any imported merchandise deposited in bond in any public or private bonded warehouse having been so deposited prior to the first day of October, eighteen hundred and ninety, may be withdrawn for consumption at any time prior to February first, eighteen hundred and ninety-one, upon the payment of duties at the rates in force prior to the passage of this act: *Provided further*, That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse said duties shall be levied and collected upon the weight of such merchandise at the time of its *withdrawal*." 26 Stat. 624, c. 1244.

"Sec. 33. That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty, upon the entry or the withdrawal thereof: *Provided*, That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its *entry*." 30 Stat. 213.

The Circuit Court held that those sections were not repugnant. The court said: "Neither is general in its application, but is restricted to merchandise previously imported for which

no entry has been made." The court, however, sustained the decision of the board on the ground that section 2983 of the Revised Statutes was applicable. That section is as follows: "In no case shall there be any abatement of the duties or allowance for any injury, damage, deterioration, loss, or leakage sustained by any merchandise while deposited in any public or private bonded warehouse."

The importers denied the application of that section, and contended that under the law, and particularly under section 20 of the Customs Administrative Act of June 10, as amended December 15, 1902 (presently to be stated), they were authorized to withdraw the merchandise from warehouse upon the payment of duties and charges based upon its weight at the time of withdrawal. The court ruled against the contention, and said: "It seems too plain for discussion that the word 'loss' (referring to section 2983), coupled as it is in the disjunctive with 'leakage,' applies precisely to such a case as the one before us. I can not find any sound reason for believing that the Congress did not have section 2983 in mind when it enacted said section 20, as amended. It is obvious that section 20, especially as amended, refers exclusively to rate rather than weight." The Circuit Court of Appeals differed from the Circuit Court in the application of section 2983. It held that the loss there provided for related solely to the loss of merchandise subject to duty, and such loss had not occurred. The court further held that the other terms of the section referred to actual reduction in the value or quantity of the merchandise itself. "It is clear," it was said, "that evaporation of moisture is not 'loss' . . . sustained by . . . merchandise." The case of *Seeberger* v. *Wright & Lawther Co.*, 157 U. S. 183, was referred to as analogous. The court also disagreed with the construction of the Circuit Court of section 20 of the Customs Administrative Act, and held that by virtue of the proviso added to that section December 15, 1902 (stated later), duties should have been assessed according to the weight of the tobacco at the time of its withdrawal.

This history of the case exhibits the contentions of the parties and the elements of the contentions, and, it will be seen, the case is one of statutory construction.

First, as to *Seeberger* v. *Wright & Lawther Co.*, 157 U. S. 183, which is urged as controlling. The importation there was flaxseed. The proof showed that the seed contained dust composed of clay, sand and gravel to an average of four per cent. The case turned upon the meaning of the word "draught" in section 2898, of the Revised Statutes. It was assumed that the word did not apply to impurities, and, it was said that the lower court was correct in assuming that the flaxseed in question which was made dutiable, under the act of 1883, at twenty cents per bushel of fifty-six pounds, less tare, meant fifty-six pounds of clean seed, or at least seed free from any impurities, such as the clay, sand and gravel in question.

The moisture which the tobacco in the case at bar absorbed can not be said to be an impurity within the meaning of that decision even though moisture in tobacco is a variable quantity and its amount can be estimated by weighing the tobacco at different times. Nor can it be considered as an independent, non-taxable substance, even though, as conceded in this case, it was absorbed on the ocean voyage. The statutes contemplate and apply to merchandise which may change in weight, and if the moisture in the tobacco in this case can be regarded as an independent substance—so much "sea-water," to use counsel's graphic phrase—a question of the application of section 50 or 33, could not arise. One or the other of those sections was considered applicable from the beginning, and the importations regarded as controlled by it, as merchandise subject to duty by weight, and necessarily there was involved the question at what time the weight should be estimated—at the time of entry or at the time of withdrawal from warehouse. To that question, then, we shall address ourselves.

It is said by counsel for the United States that, prior to October 1, 1890, duties were uniformly demanded and collected according to the weight of merchandise at original entry, citing

in support of the assertion the custom regulations of 1884 and 1899. Upon that date (October 1, 1890) the Tariff Act of 1890 took effect. Section 50, provided, as we have seen, that goods previously imported, for which no entry had been made, and goods warehoused, for which no permit of delivery had been issued, should be subject to no other duty than if the goods were imported after the day the act took effect. It was also provided that when duties were based upon the weight of warehoused merchandise the duty should "be levied and collected upon the weight of such merchandise at the time of its *withdrawal*" (italics ours). A question arose as to the scope of the proviso, whether it was restricted to the matter immediately preceding, that is, merchandise imported before the act took effect, or was of general application, applying as well to merchandise imported after as before the act took effect. The Attorney General decided that the latter was its effect. He said, 20 Ops. 80, 82: "I am aware that under former tariff acts the rule has been to levy duties upon weighable merchandise according to the weight at the date of importation, but this proviso seems to be intended to change that rule, and there seems to be sufficient reason for such change."

The executive officers of the Government followed this construction until the act of July 24, 1897, known as the Dingley Act, was passed. The construction made by the Attorney General is disputed, as applicable to section 33 of the act of 1897, and it is urged that the whole scope and meaning of that section, when reduced to its simplest terms, make goods theretofore entered under bond for warehouse subject to the duties imposed by the act upon the withdrawal thereof, when the section is construed in accordance with the rule that a proviso refers only to the provision of a statute to which it is appended. This may be conceded to be the primary purpose of a proviso, but a presumption of such purpose can not prevail to determine the intention of the legislature against other tests of meaning more demonstrative. We said in *United States* v. *Whitridge*, 197 U. S. 135 (p. 143): "While no doubt the grammatical and

logical scope of a proviso is confined to the subject-matter of the principal clause, we can not forget that in practice no such limit is observed." And the Attorney General's opinion can not be overlooked. The proviso which he construed in section 50 of the act of 1890 was reënacted in section 33 of the act of 1897. It would be extreme to hold that Congress by doing so intended to set up the technical rule relating to provisos against the construction of the Attorney General and to change that construction by repeating the very words construed. And there could have been no oversight. The practice of the executive officers for years gave emphasis and materiality to the construction. A change was made, however—a change of one word—a change recommended by the Treasury Department to increase the revenues and give greater convenience to the administration of the customs laws. The word "entry" was substituted for the word "withdrawal," and necessarily thereafter duties upon merchandise there provided for were to be based upon weight at the time of *entry*. Nor do we see that there is any contradiction of this in other provisions of the statute. Certain provisions of the Customs Administrative Act are, however, relied upon. The provisions of that act, hereafter quoted, originated in section 1 of the act of March 14, 1866, 14 Stat. 8, c. 17, and were carried into the Revised Statutes as section 2970, which provided that merchandise deposited in warehouse might be withdrawn for consumption within one year from the date of importation, upon payment of the duties and charges to which it might be subject by law at the time of withdrawal. At the expiration of one year, and until the expiration of three years, it might be withdrawn for consumption on payment of the duties assessed on the original entry and charges, and an additional duty of ten per centum on the amount of such duties. It was decided in *Merritt* v. *Cameron*, 137 U. S. 542, 550, 551, that that section "was intended to provide for cases in which a change of rate of duty had been made by statute while the merchandise was in bonded warehouse."

Then came section 20 of the Customs Administrative Act of June 10, 1890 (26 Stat. 140, 624, c. 407), as amended by act of October 1, 1890, providing that warehouse merchandise might be withdrawn for consumption within three years from the date of the original importation, on payment of the duties and charges to which it might be subject by law at the time of such withdrawal. The section was amended in 1902 (32 Stat. 753, c. 1), by the addition of the following proviso: "Provided, that the same rate of duty shall be collected thereon as may be imposed by law upon like articles of merchandise imported at the time of the withdrawal." The Circuit Court of Appeals gave controlling force to the proviso as fixing the meaning of the section. The court said that it had held in *Mosle* v. *Bidwell*, 130 Fed. Rep. 334, "that the amendment of 1902 was declaratory of the meaning of the section prior to said amendment, and that its meaning as thus declared was that no greater or different duties" should be imposed on goods when withdrawn from warehouse than would be imposed on "other like goods imported at the time of withdrawal." Regarding this decision as conclusive the court said: "If other like goods had been imported at the time when these goods (the tobacco in question) were withdrawn, duty would have been assessed thereon according to their weight at such time." But the question in *Mosle* v. *Bidwell* was not the same as in the case at bar. The question now is not what rate of duty merchandise is subject to, or whether it is exempt from duty, but at what date its weight is to be taken as a basis of duty. And weight is a fact independent of the rate of duty. The proviso of section 20 of the Customs Administrative Act, therefore, can not be made paramount to the proviso in section 33 of the Tariff Act of 1897. Nor was that the purpose of its enactment. It was enacted to nullify the effect of the decision of the Circuit Court in *Mosle* v. *Bidwell*, by which section 20, was construed to require the payment of duties which had accrued at the time of importation, notwithstanding a change of rate or that the goods had become exempt from duty before

their withdrawal from warehouse. This construction was contrary to the general understanding of the section and the practice of the Department. This, then, is our view: the Attorney General having construed the proviso of section 50 of the act of 1890 as not restricted to the matter which immediately preceded it, but as of general application, and this construction having been followed by the executive officers charged with the administration of the law, Congress adopted the construction by the enactment of section 33 of the act of 1897 and intended to make no other change than to require as the basis of duty the weight of the merchandise at the time of entry instead of its weight at the time of its withdrawal from warehouse.

*Judgment of the Circuit Court of Appeals is therefore reversed and that of the Circuit Court is affirmed and the case remanded to the latter court.*

MR. JUSTICE MOODY took no part in the decision of this case.