**UNITED STATES ex rel. HIRSHBERG v. MALANAPHY.**

No. 193, Docket 20902.

Circuit Court of Appeals, Second Circuit.

April 9, 1948.

On Rehearing June 2, 1948.

504

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y., (T. Vincent Quinn, Asst. Atty. Gen., and O. S. Colclough, Rear Admiral, U. S. Navy, Judge Advocate General of Navy, of Washington, D. C., on the brief; Frank J. Parker, Chief Asst. U. S. Atty., of Brooklyn, N. Y., and Frederick Bernays Wiener, Sp. Asst. to Atty. Gen., of counsel), for appellant.

Francis A. McGurk and John J. O'Neil, both of New York City, for appellee.

Before L. HAND, SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from an order sustaining a writ of habeas corpus and, releasing the relator from the custody of the appellant, who held him in detention after his conviction by a naval general court-martial of violations of Article 8 of the Articles. for the Government of the Navy, 34 U.S. C.A. § 1200, Art. 8 Second. The relator's. petition for the writ challenged the jurisdiction of the court-martial on two grounds: (1) that when the alleged offenses were committed he was not subject to the jurisdiction of the United States Navy because he was then a prisoner of war of the Japanese in the Philippine Islands, and (2) that after commission of the alleged offenses his term of enlistment ended and he received an honorable discharge, and was thereby released from any liability for acts done during that enlistment, despite the fact that he reenlisted the following day. In an opinion reported in 73 F.Supp. 990, the district court overruled the first contention but sustained the second.

The facts are not in dispute. The relator enlisted in the United States Navy in 1936. and by reenlistment in 1941 was still in such service, being stationed in the Philippine Islands, when the United States forces on Corregidor surrendered in May 1942. He thereby became a Japanese prisoner of war and remained such until he was liberated in September 1945. During this period his. rating was that of Chief Signalman, which made him a Chief Petty Officer in the Navy.[1] After his liberation he was returned to the United States and received an honorable discharge by reason of the termination of his enlistment, effective at midnight on March 26, 1946. On the afternoon of the following day he reenlisted for a. term of four years. Thereafter, in February, 1947, he was served with charges directing his trial before a general court-martial convened by the Commandant, Third. Naval District, for offenses alleged to have been committed between November 10, 1942 and March 1, 1944, while he was a prisoner of war of the Japanese. The trial was concluded on August 12, 1947; it resulted in. his conviction on two specifications, and he was sentenced to 10 months' confinement,. to reduction in grade to apprentice seaman, and to dishonorable discharge from the:

---

[1] 34 U.S.C.A. § 176; Bureau of Naval Personnel Manual, p. 82A, Art. D-5102.

Navy. His petition for a writ of habeas corpus was filed August 18, 1947.

■ The relator's contention that the court-martial lacked jurisdiction because the offenses with which he was charged were committed while he was a prisoner of war, was correctly overruled by the district judge and there is no need to add to his opinion on this point.

■ Less easy of solution is the relator's other contention, namely, that the court-martial lacked jurisdiction to try him for offenses committed during an enlistment from which he had been honorably discharged. It has long been the rule that a member of the Navy or the Army who has received an honorable discharge from service and been returned to civilian life cannot be tried by court-martial for offenses committed during his enlistment, except such offenses as are specifically withdrawn from the general rule by Article 14 of the Articles for Government of the Navy, 34 U.S.C.A. § 1200, Art. 14 or Article 94 of the Articles of War, 10 U.S.C.A. § 1566, Art. 94.[2] The offenses of which the relator was convicted were not of those specified in Article 14. And a subsequent reenlistment, no matter how soon after the discharge, does not revive the lost jurisdiction. See Winthrop, Military Law and Precedents, 1920 ed., 93; CMO 22—1917, page 7; CMO 12—1921, page 11; CMO 1 —1926, page 9; CMO 12—1929, page 7. These rulings would be conclusive against the jurisdiction of the court-martial in the case at bar, were it not for section 334, Naval Courts and Boards, 1937.[3] This volume was issued by the Secretary of the

Navy March 4, 1937 and approved by the President March 5, 1937. Above the Secretary's signature appears the following direction:

"Naval Courts and Boards, 1937, is issued for the government of all persons attached to the naval service. It is hereby required and directed that all officers and other persons belonging to the Navy, so far as the duties of each are concerned, make themselves acquainted with, observe and comply with the provisions contained herein."

■ Section 591 of 34 U.S.C.A. provides that "The orders, regulations, and instructions issued by the Secretary of the Navy * * * with the approval of the President, shall be recognized as the regulations of the Navy * * *." Although section 334 of Naval Courts and Boards, 1937, is not in form an imperative declaration, it is, we submit, an "instruction" for the direction of naval personnel, for otherwise it would be meaningless to include it in a volume "issued for the government of all persons attached to the naval service," and so it has been construed in CMO 7— 1938, page 42, and in the court-martial record of the case at bar. Section 334 is part of Chapter IV entitled "Instructions for Court Martial." The introductory section to this chapter, § 325, provides that "The provisions of this chapter are to be observed by general and summary courts martial, and * * * by deck courts." Being an "instruction," § 334 must be considered a "regulation" to which 34 U.S. C.A. § 591 "gives the force of law." Denby v. Berry, 263 U.S. 29, 37, 44 S.Ct. 74, 77, 68 L.Ed. 148. So considered, it does

---

[2] See Ex parte Wilson, D.C.E.D.Va., 33 F.2d 214; Ex parte Drainer, D.C.N. D.Cal., 65 F.Supp. 410, 411, affirmed sub nom. Gould v. Drainer, 9 Cir., 158 F.2d 981; United States ex rel. Viscardi v. MacDonald, D.C.E.D.N.Y., 265 F. 695, 697; Durant v. Hironimus, D.C.S.D.W. Va., 73 F.Supp. 79, 85.

[3] "* * * Except for offenses provided for in article 14, A.G.N., a court martial may not try an individual who has been formally separated from the Navy and is no longer in the service unless proceedings were instituted against him while he was in the service. However, if

an officer reenters the service and his trial is not barred by the statute of limitations, it has been judicially decided that he may be tried by court martial and punished for an offense committed during his previous service, whether or not the offense is one for which trial by court martial after separation from the service is specifically authorized by statute. Similarly, the Navy Department has passed cases as legal in which enlisted men have been convicted by court martial of offenses committed in a previous enlistment, although such offenses were not provided for in article 14, A.G.N."

not conflict with Article 14 Eleventh (Trial of offender after discharge), 34 U.S.C.A. § 1200 Art. 14. That provision subjects persons after discharge to prosecution for the ten offenses enumerated in Article 14, regardless of reenlistment; but this does not imply that persons who have committed other crimes and have thereafter reenlisted may not be subject to prosecution, if the "regulations" so provide.

■■ An enlistment is a contract. In re Grimley, 137 U.S. 147, 151, 11 S.Ct. 54, 34 L.Ed. 636. In reenlisting on March 27, 1946 the relator signed a paper which read in part as follows:

"I also oblige myself, during such service, to comply with and be subject to such laws, regulations and Articles for the Government of the Navy as are or shall be established by * * * competent authority * * * ".

Thus section 334 of Naval Courts and Boards, 1937, which we have shown to be a "regulation" was expressly incorporated into his enlistment contract. Even without such express incorporation of existing regulations, we cannot doubt that by his enlistment he became subject to them. While the record does not appear to contain the paper signed by the relator at the time of his enlistment in 1941, we do not regard that as important since § 334 had already been promulgated. Hence the relator's honorable discharge on March 26, 1946 did not terminate the jurisdiction of the Navy to call him to account for offenses during that enlistment if he should reenlist, as he did the following afternoon. His consent to "subject" himself to all existing regulations answers any constitutional objection which can be raised.

■■ As for the argument that a discharge is equivalent to an adjudication that he had not committed any offense, the case of United States v. Landers, 92 U.S. 77, 23 L.Ed. 603, shows that United States v. Kelly, 15 Wall. 34, 82 U.S. 34, 21 L.Ed. 106, did not go so far as that.

Order reversed with directions to dismiss the writ and remand the relator to the custody of the appellant.

On Petition for Rehearing.

PER CURIAM.

Upon rehearing the relator contends (1) that Naval Courts and Boards 1937 does not have the force of law; (2) that Article 334 of that publication was not intended to change the rule as to jurisdiction over reenlisted naval personnel in respect to offenses committed during a prior enlistment; and (3) that if such change was intended, the jurisdiction of naval courts-martial cannot be enlarged by such executive action. The argument upon rehearing has left a majority of the court of the same mind as formerly, and as to points (1) and (2) we see no reason to add to our original opinion.

■■ The argument in support of point (3) is built largely on Articles for the Government of the Navy, Art. 14 which permits trial by court-martial for the offenses listed therein, although the defendant has been honorably discharged; the implication being, the relator asserts, that for no other offenses can he be so tried after discharge. We think this a non sequitur. It is true, of course, that a civilian cannot be tried by court-martial. Once clear of the Navy by his discharge, the Navy has no further power over former naval personnel; and it was for that very reason that AGN 14 had to reserve jurisdiction expressly. But when a man reenlists he subjects himself to courts-martial generally, and the only question is whether their jurisdiction is limited to offenses committed thereafter. Upon that question no light is thrown by the fact that it was necessary expressly to retain by AGN 14 court-martial jurisdiction over the person after a man had been discharged from the Navy and while he remained a civilian. In the case of the relator, court-martial jurisdiction existed over the offense and over his person when he committed the acts complained of; when he was discharged jurisdiction over his person was lost; when he reenlisted jurisdiction over his person was restored. A priori there is no reason to say that because there was a period—in this case a matter of hours—when the court-martial had no jurisdiction over his person, that its jurisdiction, when restored,

is not complete both as to subject matter and as to person. The analogy suggested by counsel for the appellant seems apposite: namely, that of a defendant who commits a crime in Canada, escapes to the United States, and then returns to Canada; he cannot defend on the ground that between the offense and the trial he was beyond the jurisdiction of the Canadian court. We find nothing in AGN 14 which by implication reduces the preexisting jurisdiction of the court-martial. We submit that the question is not of jurisdiction of the court-martial but of whether an honorable discharge operates as a pardon; and it does not.

██ The relator argues that in any event we should yield to the long-standing administrative interpretation that reenlistment does not restore court-martial jurisdiction over prior offenses. Apparently such has been the interpretation in the Army up to the present time, and such was the interpretation in the Navy until about 1932, but then there was a volte face and a precisely opposite interpretation which is now incorporated in Article 334 of Naval Courts and Boards 1937. We must distinguish between taking administrative interpretation as evidence and as changing the statute. The latter can never be done administratively. Hence the sole office of administrative interpretation is as evidence of those who must constantly deal with the statute, and whose understanding of it is likely to be right in cases of doubt. It is not as if the Navy's interpretation from 1862 to 1932 enacted the statute in that form and its opposite interpretation from 1932 to 1948 were an invalid attempt to amend it. On the contrary the Navy has had two interpretations and their later one seems to us permissible and preferable.

We adhere to our former judgment.

FRANK, Circuit Judge.

1. I dissent solely with respect to the power of the court-martial to try appellee. I think it will help, in order to bring out that issue sharply, to report (as my colleagues have not done) the contentions of appellant's counsel (speaking for the Navy) in his briefs and in his oral argument on rehearing.[1]

(1) The Navy (as distinguished from my colleagues) freely concedes that 34 U.S.C. A. § 591 has nothing to do with this case. Appellant's counsel on oral argument admitted that that provision of the statute creates no power, by a "regulation" or otherwise, to widen the statutory scope of a court-martial; that nowhere else in the statute can such power be found; and that, therefore, § 334 of Naval Courts and Boards, 1937, in no way purported to relax any statutory restrictions on courts-martial contained or implied in 34 U.S.C.A. § 1200 (i. e., the Articles for the Regulation of the Navy). The authorities, I think, plainly require that concession. They hold that regulations under 34 U.S.C.A. § 591 "must be consistent with" other provisions of the statute,[2] and they thus construe 34 U.S.C.A. § 591 identically with 5 U.S.C.A. § 22. The latter has been held to confer "administrative · power only," not legislative; to authorize no regulations which "extend a statute or modify its provisions."[3] It is easy, therefore, to understand why counsel for appellant admitted that, as to naval courts-martial, the power of the executive is no greater than that expressly granted as to Army courts-martial by 10 U.S.C.A. § 1509, i. e., by regulation to prescribe no more than the procedure and rules of evidence.

(2) The Navy Articles were enacted by Congress in 1862. The Army Articles (as amended now found in 10 U.S.C.A. Ch. 36)

---

[1] Because of the position of counsel for appellant on rehearing, I have withdrawn my earlier dissenting opinion and have substituted what appears in the text.

[2] United States v. Symonds, 120 U.S. 46, 49, 7 S.Ct. 411, 412, 30 L.Ed. 557; Glavey v. United States, 182 U.S. 595, 605, 606, 21 S.Ct. 891, 45 L.Ed. 1247; 13 Op. of Atty.Genl., 9, 12; 30 Op. of Atty.Genl., 234, 237-238.

[3] United States v. Eaton, 144 U.S. 677, 687, 12 S.Ct. 764, 36 L.Ed. 591; Morrill v. Jones, 106 U.S. 466, 467, 1 S.Ct. 423, 27 L.Ed. 267; United States v. George, 228 U.S. 14, 20-22, 33 S.Ct. 412, 414, 57 L.Ed. 712; United States v. United Verde Copper Co., 196 U.S. 207, 215, 25 S.Ct. 222, 49 L.Ed. 449; International Ry. Co. v. Davidson, 257 U.S. 506, 515, 42 S.Ct. 179, 66 L.Ed. 341; Campbell v. Galeno Chemical Co., 281 U.S. 599, 610, 50 S.Ct. 412, 415, 74 L. Ed. 1063.

had been previously enacted. Appellant's counsel concedes that, beginning in 1862, the Judge Advocate Generals of the Army repeatedly published rulings—which (says appellant's counsel) were "slavishly copied by" the Judge Advocates of the Navy—to the following effect: Except as to offenses (involving fraud and the like) described in Article 94 of the Articles of War [4] and Article 14 of the Navy Articles,[5] one who has received an honorable discharge and who has re-enlisted—no matter how soon after his discharge [6]—cannot legally be tried by a court-martial for an offense committed during his earlier enlistment. To that position, we are told, the Army has adhered, without deviation, for 86 years, i. e., from 1862 to the present. The Navy similarly adhered to that position for at least 70 years (1862-1932). In his brief, appellant's counsel says, "The traditional rule is stated in the Army's Manual for Courts Martial (1928) par. 10, as follows: 'The general rule is that court-martial jurisdiction over officers, cadets, soldiers, and others in the military service of the United States ceases on discharge or other separation from such service, and that jurisdiction as to an offense committed during a period of service thus terminated is not revived by a re-entry into the military service.'" Winthrop, Military Law and Precedents (2d ed. 1896), the standard text on the subject, officially endorsed by the Army, says (p. 124): "Putting out of the question the class of offences, the amenability for which is expressly defined by the 60th Article [now Art. 94], it is the opinion of the author that, in separating in any legal form from the service an officer or soldier or consenting to his separation therefrom, and remanding him to the civil status at which the military jurisdiction properly terminates, the United States (while it may of course continue to hold him liable for a pecuniary deficit), must be deemed in law to waive the right to prosecute him before a court-martial for an offence previously committed but not brought to trial. In this view, a subsequent re-appointment or re-enlistment into the army would not revive the jurisdiction for past offences, but the same would properly be considered as finally lapsed."

(3) But, it is said, in decisions of naval courts-martial beginning in 1932, the Navy adopted a different attitude which (it is urged) was embodied as an instruction in § 334 of Naval Courts and Boards 1937, issued by the Secretary of the Navy with the approval of the President.[7]

(4) Seeking to minimize the legal effect of the long-continued rulings of the Judge Advocate Generals,—which declared unequivocally that a court-martial lacks statutory power over a person like appellee—counsel for appellant argues thus: Those rulings were not official interpretations of the statute; they were but statements of policy reciting a mere self-imposed administrative restriction; consequently, the change said to have been made by the Navy, beginning in 1932, was but a reassertion of a statutory power which had existed ever since 1862.

2. Undeniably, however, those Judge Advocate General rulings were never uttered as statements of policy. Always they took the explicit form of official interpretations of the intent of Congress as voiced by it in the Articles. Thus here we have not a simple failure to exert authority, but positive, widely-published, announcements by the highest law-officers of the Army and Navy that Congress had not conferred such authority. Of course, if the statute plainly and unambiguously created that power, such interpretations would be irrelevant.

---

[4] 10 U.S.C.A. § 1566.

[5] 34 U.S.C.A. § 1200, Art. 14.

[6] The length of the interval between discharge and reenlistment cannot have any materiality; I understand my colleagues to assent to that proposition.

[7] So far as the Secretary was concerned, there was no indication of a change by the Navy until at least 1937. For the decisions before that date, cited appellant, were not in the form of any C. M. O. (a Court-Martial Order, approved by the Secretary) but merely in the form of a G. C. M. (a General Court-Martial Order of an Army Headquarters, not approved by the Secretary). The references in § 334 of Naval Courts and Boards, 1937, were merely to G. C. M. decisions. Not until 1938 (C. M. O. 7 of 1938, p. 42) was there any ruling by the Secretary which accords with my colleagues' interpretation of the statute.

However, Navy Article 14 Eleven, to say the least, raises doubts as to the existence of that power. For it specifically provides that a person guilty of certain specified offenses (with none of which appellant is charged) shall continue to be subject to court-martial notwithstanding his honorable discharge, and this suggests that such a discharge wipes out court-martial jurisdiction as to all other offenses. I do not say that Article 14 settles the question; one may argue, as my colleagues do, that perhaps Congress there intended to deal merely with discharged men who do not re-enlist. I say only that Article 14 left the statute's meaning, as to jurisdiction, ambiguous to such an extent that official interpretations, first announced contemporaneously with its enactment and then followed for many years, must be given great weight.

With the statutory ambiguity thus existing, I find it impossible to square my colleagues' decision with Trade Commission v. Bunte Bros., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881. There, after a practice, continuing for 25 years, of not enforcing a statute with respect to certain intrastate transactions, the Commission changed its position and sought to assert such authority. In construing the statute against the Commission, the Supreme Court said (at pages 351, 352 of 312 U.S., at page 582 of 61 S.Ct., 85 L.Ed. 881): "That for a quarter century the Commission has made no such claim is a powerful indication that effective enforcement of the Trade Commission Act [15 U. S.C.A. § 41 et seq.] is not dependent on control over intrastate transactions. Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise. But just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred." [8] The position here taken by the Navy is far weaker than was that of the Federal Trade Commission; for, as to that body, there was but "the want of assertion of power," while the Navy, for at least 70 years, again and again affirmatively declared that it lacked the statutory power it now claims.

3. Especially in the light of subsequent decisions, I take it that the Bunte doctrine is not to be glibly applied.[9] But here there are considerations which make the application of that doctrine peculiarly pertinent: Unlike the Bunte case, here there is involved the personal liberty of a citizen. After his discharge (and during his re-enlistment, within the period of the statute of limitations) he could have been indicted and tried in a civil court.[10] In that event, he would have been entitled to a trial by jury. The Navy's present interpretation of the statute, which my colleagues approve, would, then, deprive appellee of the privilege to be tried by a jury. Moreover, this broad interpretation is repugnant to a public policy, with its roots deep in our history, adverse to any unnecessary extension of the authority of military courts.

4. There is also the following important consideration: The Executive, under this statute, was given no power to make regulations affecting the scope of a court-martial. Consequently we do not have here a case of the exercise of "continuing rule-making power." [11] We do have official interpretations, by those to whom enforcement of the statute was entrusted, made simultaneously with the enactment of the statute and thereafter long continued.[12]

---

[8] See also Overnight Motor Co. v. Missel, 316 U.S. 572, 580, note 17, 62 S.Ct. 1216, 1222, 86 L.Ed. 1682:

"Even negative construction may be significant. Trade Commission v. Bunte Bros., 312 U.S. 349, 351, 352, 61 S.Ct. 580, 581, 582, 85 L.Ed. 881. Cf. United States v. Chicago, North Shore & Milwaukee R. Co., 288 U.S. 1, 13, 53 S.Ct. 245, 248, 77 L.Ed. 583.

[9] See United States v. American Union Transport, 327 U.S. 437, 455, note 18, 66 S.Ct. 644, 90 L.Ed. 772.

[10] See 28 U.S.C.A. § 102; 28 Op. of Atty.Genl. 24; cf. United States v. Mac-Donald, D.C., 265 F. 695, 697.

[11] See Helvering v. Wilshire Oil Co., 308 U.S. 90, 100, 60 S.Ct. 18, 24, 84 L. Ed. 101.

[12] See, e. g., Billings v. Truesdell, 321 U.S. 542, 552, 64 S.Ct. 737, 88 L.Ed. 917; United States v. American Trucking Associations, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301.

To this must be added the important fact that, after these official interpretations had been publicly reiterated for many years, Congress re-enacted the statute.[13] A statutory re-enactment does not freeze administrative rule-making power; for, if an official is given delegated authority, pursuant to a statutory standard, to make regulations, Congress, by re-enacting the statute, is not to be deemed to have commanded that one of several alternative exercises of such delegated legislative authority is thereafter to be the exclusive mode of exercising that authority.[14] But, when officials, in charge of the enforcement of a statute, and having no delegated authority whatever to make rules as to its application, give the statute a notorious interpretation, and Congress then re-enacts the statute, Congress, I think, is to be deemed to have adopted, as its own, that previously well-publicized official interpretation.

I think it pertinent that, as is well-known, the Congressional Committees in charge of legislation relating to the armed forces are peculiarly well informed as to matters affecting them. It is, therefore, most unlikely that those Committees did not know of the official interpretations when the statutes were re-enacted. It should be noted that Winthrop, Military Law and Precedents (2d ed. 1896) had been republished by the Government Printing Office early in 1920, by order of the Secretary of War "for the information of the service," and that the Army Articles were subsequently re-enacted, on June 4, 1920. As the Army and Navy interpretations, concerning jurisdiction in a case like this, were the same, adoption by Congress of the Army's interpretation of the Army Articles should be regarded as an adoption of the Navy's like interpretation of the Navy Articles.[15]

What I have said is not, I think, in conflict with Helvering v. Reynolds, 313 U.S. 428, 432, 61 S.Ct. 971, 973, 85 L.Ed. 1438, 134 A.L.R. 1155. There the Court held that an administrative construction contained in "certain office decisions of the Treasury," of a portion of the Revenue Act, although followed by re-enactment of that part of the statute, did not preclude the Treasury from subsequently promulgating Regulations inconsistent with those earlier interpretations. But that case, I think, is distinguishable in several respects: (1) The earlier Treasury interpretations, as above noted, consisted of mere "office decisions"; such interpretations "do not commit the Department to any interpretation"; see Helvering v. New York Trust Co., 292 U.S. 455, 466, 54 S.Ct. 806, 809, 78 L.Ed. 1361. (2) Those earlier interpretations were not changed by a mere subsequent interpretation but by a Regulation, specifically authorized by Congress which gave the Treasury "continuing rule-making power" (see 313 U.S. at 428, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155). (3) In the Reynolds case there was no question of jurisdiction of a criminal action involving a man's personal liberty.

Accordingly, I think we should apply the "familiar rule" stated in New York, New Haven & H. R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 401, 402, 26 S.Ct. 272, 281, 50 L.Ed. 515, "that a construction made by a body charged with the enforcement of a statute, which construction has long obtained in practical execution, and has been impliedly sanctioned by the re-enactment of the statute without alteration in the particulars construed, when not plainly erroneous, *must be treated as read into the statute.*"[16] The New Haven case was cited with approval by Holmes, J., in Copper Queen Mining Co. v. Arizona Board, 206 U.S. 474, 479, 27 S.Ct. 695, 696, 51 L.Ed. 1143, where he said that, "when, for a considerable time, a statute notoriously has received a construction in practice from those whose duty it is to carry it out, and afterwards is re-enacted in the same words, it may be presumed that the construction is satisfactory to the legislature, unless plainly erroneous, since otherwise

---

13 See the next paragraph of the text of this opinion.

14 Helvering v. Wilshire Oil Co., 308 U.S. 90, 110, 60 S.Ct. 18, 84 L.Ed. 101.

15 Moreover, before the alleged change of the Navy's interpretation, 29 of the Navy Articles were amended at least once; these amendments were made in numerous statutes from 1874 to 1925; none of these amendments indicated any intention to reject the interpretation here in question.

16 Emphasis added.

naturally the words would have been changed." [17]

I incline to agree that Congress constitutionally could have conferred jurisdiction here, whereas question has been raised as to the constitutionality of the exception clause of the Army Article 94 (which is the equivalent of the exception clause in Navy Article 14 Eleven).[18] But I cannot understand what my colleagues mean by saying that the question here is not one of statutory jurisdiction: If the statute should be interpreted as the Judge Advocate Generals construed it for many decades, then it is just as if it provided that a court-martial cannot legally try a man in the circumstances which existed here; and such a provision patently restricts jurisdiction.

5. For the foregoing reasons, I think appellee could not be tried lawfully by a Navy court-martial, even if it be assumed that the Secretary, with the President's approval, intended otherwise by publishing § 334 of Naval Courts and Boards, 1937. Moreover, I question whether such was the intent: Surely it is far from clear that those sentences in § 334, to which my colleagues refer, were meant as an instruction rather than a mere digest of earlier naval court-martial decisions which had not been previously approved by the Secretary.[19] In the light of the ambiguity of those sentences of § 334, and because, at best, the statutory authority is highly doubtful, I think we should not impute to the President the intention ascribed to him by my colleagues. Particularly should we not do so, inasmuch as otherwise we would have the strange spectacle of the President, the head of both the Army and Navy, giving one instruction to the Army and a very different one to the Navy, as to a grave matter of common concern to both services.

If, nevertheless, it be true that the President and Secretary so intended, but if (as I think) they lacked authority to issue such an instruction, appellee's re-enlistment could not validly extend the power over the court-martial over him. Even a definite consent to trial for a specific offense by a court-martial must be disregarded where statutory power is absent.[20] And here, at most, we have a general consent given before any offense was charged. As already noted, this alleged consent amounted to waiver of the right to a jury trial in a criminal suit; such a right cannot be waived, even after commencement of suit, unless the defendant is keenly aware of what he is doing.[21] There was nothing resembling such awareness here; for appellant's counsel on oral argument admitted that an enlisted man, until charged with an offense, does not ever see Naval Courts and Boards, 1937.[22]

---

[17] See also United States v. G. Falk & Brother, 204 U.S. 143, 152, 27 S.Ct. 191, 51 L.Ed. 411; United States v. Cerecedo Hermanos Y Compania, 209 U.S. 337, 339, 28 S.Ct. 532, 52 L.Ed. 821; National Lead Co. v. United States, 252 U.S. 140, 146, 40 S.Ct. 237, 64 L.Ed. 496; United States v. Bailey, 9 Pet. 238, 255, 256, 9 L.Ed. 113.

[18] United States ex rel. Flannery v. Commanding General, D.C., 69 F.Supp. 661; The Amenability of the Veterans to Military Law, 46 Col.L.Rev. (1946) 947.

[19] See footnote 7, supra.

[20] McClaughry v. Deming, 186 U.S. 49, 66, 68, 22 S.Ct. 786, 46 L.Ed. 1049; cf. Ver Mehren v. Sirmyer, 8 Cir., 36 F.2d 876, 879, 880; Rosborough v. Rossell, 1 Cir., 150 F.2d 809, 816.

[21] See, e. g., Patton v. U. S., 281 U. S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 278, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435; Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316; cf. Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680.

[22] Moreover, I think we may take judicial notice of the following: (1) Naval Courts and Boards, 1937, is not distributed to enlisted men; (2) it is not issued to all officers; (3) although each ship or shore station should have at least one copy of it, an enlisted man in the ordinary course of events does not see the volume unless he is charged with an offense or makes a special request for it to one of the officers to whom it is distributed. Appellant's counsel, indeed, admitted the truth of item (2).