UNITED STATES ex rel. Franklin E. ATKINSON, Petitioner,

v.

Colonel William J. E. KISH, Commandant, Branch United States Disciplinary Barracks, New Cumberland, Pennsylvania, Respondent.

No. 347.

United States District Court
Middle District Pennsylvania.

Sept. 15, 1959.

Jerome H. Gerber, Harrisburg, Pa., for petitioner.

Peter S. Wondolowski, Lieutenant Colonel, JAGC, Office of The Judge Advocate General, Department of the Army, Washington, D. C., Daniel H. Jenkins, U. S. Atty., Scranton, Pa., for respondent.

FOLLMER, District Judge.

This is an application for a writ of habeas corpus by Franklin E. Atkinson, a prisoner serving a sentence by a general court-martial. Petitioner contends:

(a) that the court-martial lacked jurisdiction over the offense of larceny, for which he was convicted, since it was committed prior to his discharge and reenlistment on May 22, 1956;

(b) that he was denied the effective assistance of counsel because his counsel failed to place evidence on the German law of liens before the court-martial.

The record of the court-martial was introduced into evidence.

The facts on which the parties are in substantial agreement are as follows: petitioner initially enlisted in the United States Army on October 4, 1948, and served therein for three years until his discharge therefrom in the grade of Private First Class on October 3, 1951. He reenlisted in the Regular Army on the following day, October 4, 1951, in the grade of Corporal for a period of six years. This six year enlistment would not normally have expired until October 3, 1957. The petitioner while still serving in this enlistment with the United States Army in Straubing, Germany, applied for immediate reenlistment in the Regular Army for another six year period under the provisions of Army Reg-

ulations 635–205, Department of the Army, dated April 2, 1956.[1] Pursuant to his application and in accordance with the above-cited Army Regulations, petitioner was discharged for the convenience of the Government on May 21, 1956 and immediately reenlisted the following day, May 22, 1956, for a period of six years service.

Respondent claims that in compliance with the said Army Regulations the discharge certificate was not delivered to petitioner until the oath was administered and the reenlistment thereby effected on May 22, 1956. Petitioner claims that he received his honorable discharge certificate on May 21, 1956.

While serving in his last enlistment, as aforesaid, in the grade of Sergeant, petitioner was arraigned before a general court-martial convened at Munich, Germany, on July 10, 1957, on offenses of larceny of $975, in military payment certificate, the property of Sergeant Warren M. Sager, in violation of Article 121, Uniform Code of Military Justice (Act of May 5, 1950, 81st Congress, c. 169, § 1, 64 Stat. 108, 50 U.S.C. (Chap. 22) §§ 551–736, 1952 Edition) ;[2] dishonorable

failure to pay a debt in the amount of $465, owed to Courtland Corporation, Tangiers, North Africa, in violation of Article 134, Uniform Code of Military Justice (10 U.S.C. § 934), and two offenses of making false official statements, with intent to deceive, in violation of Article 107, Uniform Code of Military Justice (10 U.S.C. § 907). The larceny offense was alleged to have been committed on May 2, 1955, which date was prior to his discharge and reenlistment on May 22, 1956. At the outset of the trial and prior to arraignment petitioner introduced a civilian attorney with offices in the City of Munich, Germany,[3] and another attorney serving as an enlisted man in the Army and requested that they defend him before the court-martial in lieu of the regularly appointed military defense counsel. Accordingly, pursuant to petitioner's request the regularly appointed military defense counsel was excused from further participation in the trial and the attorneys of his own choice, each of whom possessed the legal qualifications listed in Article 27(b), Uniform Code of Military Justice (10 U.S.C. § 827(b)), represented him throughout the trial.[4] At the arraignment petitioner

---

1. AR 635–205, 3. b. "The commanding officer of any station having facilities to effect discharge is authorized to order discharge of enlisted personnel for the convenience of the Government, for the reasons set forth in (1), (2), (3), and (4) below. Individuals being discharged from their present enlisted status as provided in this paragraph will be reenlisted on the day following discharge. The discharge certificate will not be delivered to the individual until after reenlistment is effected.

    \*        \*        \*        \*        \*

"(3) To permit immediate enlistment in the Regular Army at any time for a term of 3 years or more, as authorized, of individuals currently serving in the Army of the United States who apply for, and are qualified for, such enlistment. \* \* \*."

2. The Uniform Code of Military Justice was codified and reenacted into law without any change by the 84th Congress, c. 1041, August 10, 1956, 70A Stat. 36–78, 10 U.S.C. §§ 801–940. All references to the Uniform Code of Military Justice

will hereafter be cited under 10 U.S.C. §§ 801–940.

3. Respondent's Exhibit F.

4. Respondent's Exhibit C. (Record of Trial by Court-Martial, July 10, 1957) Page 4:
"By whom will the accused be defended?
"DC: The accused is to be defended by Mr. Milton Crook, a civilian counsel, and by Pfc Lawrence Williams, special defense counsel.
"TC: Is either Mr. Crook or Pfc Williams certified in accordance with Article 27b?
"IDC: Neither one is so certified.
"TC: Does either counsel have any of the legal qualifications listed in Article 27b?
"IDC: Yes, sir. Both individual counsel and special defense counsel, Pfc Williams, are members of the bar of the State of New York, having been admitted to such bar by the highest court of that state. Individual counsel, in addition, has been duly licensed to practice law in the United States area of

pleaded not guilty to all the charges. On July 12, 1957, the general court-martial found petitioner guilty of all offenses charged and sentenced him to be dishonorably discharged from the services, forfeiture of all pay and allowances, and confinement at hard labor for five years.[5]

The case was carefully reviewed by the Staff Judge Advocate [6] and by a Board of Review,[7] in accordance with the appellate review provided by Congress to correct the trial errors in presenting the procedure for the administration of military justice.

Thereafter on petition of petitioner for grant of review the case was considered by the United States Court of Military Appeals.[8] In this proceeding, at his request, petitioner was represented by military appellate defense counsel designated by The Judge Advocate General.

The Court of Military Appeals denied review of the error assigned by petitioner, i. e., that the applicability of the German lien law to the facts and circumstances surrounding the purchase, sale and financing of the automobile would render invalid the conviction of larceny by false pretense alleged in Charge I, and accordingly affirmed the convictions under Charge I, alleging the offense of larceny, and of Charge II, alleging the offense of dishonorably failing to pay a due debt. The Court reversed the findings of guilty under Charge III and the two specifications thereunder alleging the offenses of making false official statements with the intent to deceive and dismissed them. The case was then returned to the Board of Review for reconsideration of the sentence on the basis of the remaining affirmed findings of guilty. After further review of the case, the Board of Review, in reassessing the sentence on the basis of the remaining findings of guilty pursuant to the mandate of the Court of Military Appeals, determined that only so much of the sentence as provides for dishonorable discharge, total forfeitures and confinement at hard labor for three years was appropriate, and accordingly affirmed the sentence as thus modified.[9]

The petitioner then forwarded a petition for grant of review of the decision of Board of Review [10] on further review. A few days thereafter petitioner forwarded to the United States Court of Military Appeals a motion to withdraw petition for review, which was granted, and the sentence was accordingly ordered into execution.

This Court in habeas corpus does not sit in appellate review over such proceedings and the proceedings cannot be collaterally impeached for mere error or irregularity committed within the sphere of authority of the military court. It is not the function of habeas corpus to determine whether incompetent evidence was admitted and considered, or to review possible errors of law in the trial, or from the cold record to reweigh the testimony and pass upon the guilt or innocence of the accused.[11]

As to petitioner's claim that he was denied effective assistance of counsel, examination of the trial record shows that the regularly appointed defense counsel was excused at petitioner's request, that petitioner had retained civilian counsel and military counsel of his

responsibility in Germany by the Commanding General of USAREUR and also by the former United States High Commissioner.

"TC: Does the accused desire the services of the regularly appointed defense counsel?

"DC: No, sir.

"LO: Sergeant Atkinson, do you desire to excuse Lt John V. Patrick, Jr., from the further proceedings in this trial?

"Accused: Yes, sir."

5. Respondent's Exhibit C. (Record of Trial by Court-Martial, July 10, 1957, at Pages 203 and 219.)

6. Respondent's Exhibit E.

7. Respondent's Exhibit F.

8. Respondent's Exhibit G.

9. Respondent's Exhibit H.

10. Respondent's Exhibit I.

11. Adams v. Hiatt, D.C.M.D.Pa., 79 F. Supp. 433, and cases cited.

own choice, each of whom possessed the legal qualifications listed in Article 27 (b). Petitioner was represented throughout the trial by the counsel he had thus freely selected and nowhere during the courtmartial proceedings did he voice or show any dissatisfaction with his chosen counsel. Furthermore, at no stage during the military appellate review of his case before the Board of Review or the Court of Military Appeals, at which appellate proceedings he was represented by qualified military defense counsel designated by The Judge Advocate General under the provisions of Article 70(a) and (c) (1), Uniform Code of Military Justice (10 U.S.C. § 870(a) and (c) (1), did he voice or show any dissatisfaction with his chosen counsel. As we stated in Allen v. Wilkinson, D.C.M.D.Pa., 129 F.Supp. 73, 75,

"* * * This likewise could have been but was not raised in the military courts and may not therefore be considered when presented for the first time in the application for habeas corpus.[3] (Footnote 3. See also Suttles v. Davis, 10 Cir., 215 F.2d 760, 763.) Moreover, this is not a proper matter for review in habeas corpus. In Hiatt v. Brown, 339 U.S. 103, 110, 70 S.Ct. 495, 498, 94 L.Ed. 691, the Supreme Court said:

"'* * * We think the court was in error in extending its review, for the purpose of determining compliance with the due process clause, to such matters as the propositions of law set forth in the staff judge advocate's report, the sufficiency of the evidence to sustain respondent's conviction, the adequacy of the pre-trial investigation, and the competence of the law member and defense counsel.'"[12]

Furthermore, our examination of the record clearly negatives petitioner's contention. In our opinion petitioner was ably and vigorously represented by thoroughly competent counsel who brought to the attention of the court-martial the pertinent portions of German law on liens which petitioner here claims were omitted by counsel. While petitioner's claim of inadequate representation is completely without merit, he cannot here, in the face of the record, be heard to complain of the performance of his personally selected counsel.

In Morton v. Welch, 4 Cir., 162 F.2d 840, 842, the court stated:

"Nor is there any substance in the point now made that the appellant's trial counsel in the criminal case was inefficient in presenting the defense. The attorney was of the defendant's own selection and there is no charge made that he was not ordinarily competent or lacked good faith in the particular case. It is not permissible, in a habeas corpus case, to attack the validity of the judgment in a criminal case, merely on the ground that the defendant was inadequately represented by his own deliberately selected counsel. * * *"

■ Petitioner further contends that the court-martial lacked jurisdiction over the offense of larceny since it was committed prior to his discharge and reenlistment of May 22, 1956. In support of his contention, petitioner relies heavily on United States ex rel. Hirshberg v. Cooke, Commanding Officer, 1949, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621. This case is clearly distinguishable from the instant case. In Hirshberg, the petitioner, an enlisted man serving in the Navy, was captured by the Japanese and remained a prisoner of war until his liberation by American forces in 1945. He was hospitalized for a time and restored to duty in January, 1946. On March 26, 1946, he was granted an honorable discharge because of the expiration of his prior enlistment. He reenlisted for another four year term the following day. It was a full day after receiving this discharge that Hirshberg elected to reenlist in the Navy. Approximately one year later he was tried upon charges of

12. In addition to Suttles v. Davis, supra, see also Osborn v. Swope, 9 Cir., 1956, 230 F.2d 395, 397.

maltreatment of other prisoners under his charge during his confinement as a prisoner of war. His plea that the court-martial was without jurisdiction to try him for the offenses committed during a prior enlistment at the termination of which he had received an honorable discharge was overruled by the military courts. He was convicted on some of the charges and specifications and sentenced to confinement. Thereafter he instituted habeas corpus proceedings in the Federal District Court, contending that the court-martial lacked jurisdiction. The District Court sustained his contention (United States ex rel. Hirshberg v. Malanaphy, D.C., 73 F.Supp. 990), the Court of Appeals reversed (2 Cir., 168 F.2d 503), certiorari was granted by the Supreme Court and it affirmed the holding of the District Court. The Supreme Court held that under these circumstances Congress did not intend that jurisdiction be continued unbroken as to offenses committed during the first enlistment since petitioner Hirshberg had reverted to the status of a civilian during the interim between the discharge at the expiration of his term and his subsequent reenlistment.

We are accordingly here met with the question whether the instant case involving a discharge from an unexpired term of enlistment for the purpose of immediate reenlistment for another six year term of enlistment falls within the Hirshberg case. The nub of the opinion in the Hirshberg case is that a hiatus had occurred in the service of Hirshberg, accordingly, he was not amenable to trial by court-martial for the offenses committed during his preceding enlistment. In Hirshberg the term of enlistment had expired, he was entitled to and did receive his discharge and after the receipt thereof he could have walked away from his station and gone home. In the instant case the term of enlistment had not expired. Petitioner desired to reenlist and he was accordingly discharged "for the convenience of the Government" prior to the expiration of his term of enlistment for the purpose of immediate re-enlistment, under the provisions of Army Regulations 635–205, supra. The Regulation specifically provides that the discharge certificate shall not be delivered until after reenlistment is effected. After carefully reviewing the file and seeing and hearing petitioner on the stand, I conclude that the reenlistment was effected in complete compliance with the Regulation.

Following the Hirshberg case the United States Court of Military Appeals considered the case of United States v. Solinsky, 2 USCMA 153, 7 CMR 29 (1953). The facts in Solinsky are almost identical with those in the instant case. The court, after carefully analyzing the opinion in Hirshberg, held that it was not applicable or controlling to the situation where a soldier while still serving in an unexpired term of enlistment and pursuant to his application is discharged for the "convenience of the Government" in order that he may immediately reenlist for another term of enlistment.

In Solinsky, supra, the court said, inter alia:

"When accomplished in the manner prescribed by the regulation, accused's discharge did not terminate his membership in the Army. This, because his then current term did not expire until sometime after September 5, 1949, and his discharge for convenience could not have been effective on that date without immediate re-enlistment. Had he accepted the discharge and thereafter failed to comply with the provision of the regulation requiring his reenlistment, his discharge would have been fraudulently procured. Paragraph 10 of the 1949 Manual lists as one of the exceptions to the general rule the following:

"'If a soldier obtains his discharge by fraud, the discharge may be canceled and the soldier arrested and returned to military control. He may also be required to serve out his enlistment and may be tried for his fraud.'

\*    \*    \*    \*    \*    \*

"In the case at bar, accused's discharge was conditioned upon his compliance with the provisions of the regulation and would have been voidable without such compliance. Clearly, the only purpose for a discharge and re-enlistment prior to the expiration of the then existing term of enlistment is to facilitate the administration and effectuation of a continuous term of service. It is not intended to return a soldier to a civilian status and then have him once again become a soldier, rather it is intended that the military status be not interrupted. The whole complexion of the proceedings argue against an interrupted status. The discharge was not delivered until the re-enlistment had been accomplished; there was no break in service or pay; the accused could have been ordered to perform a special mission covering that period; he was entitled to every benefit incidental to membership in the armed forces; there was not a fraction of a second that he was not subject to military orders or military control; and every fact and all circumstances point to a situation where the discharge and re-enlistment were to be simultaneous events for the sole purpose of preventing a hiatus or break in the service. Under the regulations and under the procedure outlined, one term could not end until the other commenced. If, by analogy, we compare the arrangement with a commercial contract, it was an extension before the end of the term. The only change was an extension of the term."

Following the Hirshberg case (1949), Article 3(a), Uniform Code of Military Justice (10 U.S.C. § 803(a)), was enacted on May 5, 1950. This Article provides:

"(a) Subject to section 843 of this title (article 43), no person charged with having committed, while in a status in which he was subject to this chapter, an offense against this chapter, punishable by confinement for five years or more and for which the person cannot be tried in the courts of the United States or of a State, a Territory, or the District of Columbia, may be relieved from amenability to trial by court-martial by reason of the termination of that status."

The offense of larceny of which petitioner was convicted is punishable with confinement at hard labor for five years,[13] and having been committed in Germany is not an offense cognizable or triable in civil courts enumerated in Article 3(a), supra. The offense of larceny with which petitioner was charged therefor falls squarely within Article 3(a). The sole question that remains is what effect the decision in United States ex rel. Toth v. Quarles, 1955, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8, has upon the constitutionality of Article 3(a) in so far as it relates to the instant case. The obvious distinction between the cases is that while Toth after discharge remained a civilian, Atkinson reenlisted and was a soldier at the time of trial.

This precise question was considered very ably and at considerable length by the United States Court of Military Appeals in United States v. Gallagher, (1957) 7 USCMA 506, 22 CMR 296. Referring to 3(a), supra, the court said:

" \* \* \* we believe Congress enacted legislation which permits military courts to try offenders who never really left the service between the time of the commission of the offense and the date of trial, and that this legislation is constitutionally valid when limited to the kind of situation presently before us. \* \* \*

\*    \*    \*    \*    \*    \*

"We have not the slightest doubt but what Congress passed this statute for the principal purpose of covering the situation brought about by

13. Par. 127c, MCM, 1951.

the decision in Hirshberg v. Cooke, supra. The legislative history demonstrates beyond question that the attention of the 81st Congress was focused on this precise issue, namely, the extent of a military court's statutory power to punish a man in the service for an offense committed in a prior enlistment period from which he had been discharged. * * *."

Then follows a recital of discussion found in House Hearings on the Uniform Code (Hearings before House Armed Services Committee, 81st Congress, 1st Session, on H.R. 2498, page 617). The facts in Gallagher are similar to those in the instant case except that in Gallagher there was apparently an admitted nine hour hiatus in the service of the accused.

As I indicated above, my deduction from a careful reading of the record of this trial implemented by the personal appearance and testimony of petitioner from the witness stand is that there was no hiatus in the service of Atkinson.

The Court of Military Appeals in Gallagher found a clear distinction in that case from the facts in Toth and accordingly found Article 3(a), supra, constitutional as applied to the facts in Gallagher.

In Toth, supra, the Court said, inter alia (350 U.S. 11, 14, 76 S.Ct. 1, 4, 100 L.Ed. 8):

"This Court has held that the Article I clause just quoted authorizes Congress to subject persons actually in the armed service to trial by court-martial for military and naval offenses. Later it was held that court-martial jurisdiction could be exerted over a dishonorably discharged soldier then a military prisoner serving a sentence imposed by a prior court-martial. It has never been intimated by this Court, however, that Article I military jurisdiction could be extended to civilian ex-soldiers *who had severed all relationship with the military and its institutions.* To allow this extension of military authority would require an extremely broad construction of the language used in the constitutional provision relied on. For given its natural meaning, the power granted Congress 'To make Rules' to regulate 'the land and naval Forces' would seem to restrict court-martial jurisdiction to persons who are actually members or part of the armed forces. * * *." (Emphasis supplied.)

It is more than a coincidence that the majority opinion in Toth repeatedly emphasizes that its ruling was limited to the attempted application of Article 3(a) to "civilian ex-servicemen," "civilian ex-soldiers," or "civilians like Toth." The Court concludes:

"* * * We hold that Congress cannot *subject civilians like Toth* to trial by court-martial. They, like other civilians, are entitled to have the benefit of safeguards afforded those tried in the regular courts authorized by Article III of the Constitution." (Emphasis supplied.)

In the instant case, very definitely Atkinson at no time pertinent hereto was a "civilian like Toth."

I concur in the able opinion of the United States Court of Military Appeals in Gallagher. I find, as applied to the facts in this case, Article 3(a) to be constitutional.

The application for writ of habeas corpus will be denied and the Rule to Show Cause will be discharged.